8262

STATE *EX REL.* LYON, ATTORNEY GENERAL, v. STATE
WAREHOUSE COMMISSION.

1. CONSTITUTIONAL LAW—COTTON—WAREHOUSE COMMISSION.—As to whether the act, 27 Stats., providing for a warehouse system for storing cotton, is constitutional, the Court holds:

That the act is for a public purpose and is within exercise of the police power by the State.

That building warehouses not being an "ordinary function of government" in the sense of those words in section 11, article X, of the Constitution, bonds cannot be issued by the State for such purpose.

That the bonds provided for in the act being therein declared not intended to be an obligation of the State prohibits their issuance as bonds can only be issued for an obligation of the State.

That the act being a police regulation, it cannot be held discriminatory under either the State or Federal Constitutions, in that it provides for the housing, classification, etc., of only one commodity.

That the receipt provided to be given the owner of cotton upon its being stored, partakes in no respect of the characteristics of "scrip, certificate or other evidence of State indebtedness," prohibited by section 7 of article X of the Constitution.

That the act violates section 2 of article X of the Constitution, in that it appropriates in one fiscal year a sum to be disbursed in two equal annual installments.

That the act being for a public purpose is not obnoxious to section 6 of article X of the Constitution, prohibiting the credit of the State being loaned or pledged for the benefit of any individual, company, association or corporation.

2. STATUTES—CONSTITUTIONAL LAW.—The act is declared void because the portions not complying with the Constitution are so connected with the valid parts as to lead to the conclusion that the legislature would not have enacted the one without the other.

Petition in the original jurisdiction of this Court by J. Fraser Lyon, Attorney General, against J. W. McCown, Chairman; T. L. Clinkscales and John S. Horlbeck, as State Warehouse Commission, for the purpose of obtaining a construction of the following act, 27 Stats. 707:

## "AN ACT

## "To Create and Operate a State Warehouse System for Storing Cotton and Other Commodities.

Section 1. *"Be it enacted* by the General Assembly of the State of South Carolina, That there shall be elected forthwith by the General Assembly three commissioners, who shall constitute a board, to be hereafter known as the State warehouse commission. The term of office shall be for two, four and six years, the members of the board deciding by lot the respective terms of each. In case of a vacancy by death or otherwise on the board of commissioners, the governor shall appoint a person to fill such vacancy until the next regular session of the General Assembly, when an election shall be held as provided for in this section.

Sec. 2. "The chairman of the board thus created shall be designated by the General Assembly at the time of the election provided for in section 1 of this act, whose duty it shall be to preside at all meetings of the commission and have general supervision of the management of the business of the commission, subject, however, to the approval of the majority of the members of said commission; and it shall be his further duty to enforce and carry out all such rules and regulations as may be adopted by said commission for the control and management of the business provided for in this act.

Sec. 3. "It shall be the duty of the State warehouse commission to provide, by purchase, lease or otherwise, a system of warehouses at the most eligible sites in this State, capable of storing not less than 250,000 bales of cotton, and the commission is hereby given power and authority to employ clerks, architects and such other agents and employees as in their judgment they deem necessary, and adopt rules and regulations not contrary to the provisions herein set forth, which, in their judgment, are necessary to carry out the intent and purposes of this act; and the said commission

shall have the power to enter into contracts with relation to the matters contained herein, and may sue and be sued in any of the Courts of this State: *Provided,* That only the property held by the said warehouse commission for the purposes herein mentioned shall be answerable in any suit or action against them.

Sec. 4. "The manager of the State warehouses shall be appointed and his duties prescribed by the board of commissioners, who shall fix the compensation of such manager, and the said manager shall be subject to removal by the board of commissioners whenever, in their judgment, the public interest demands it.

Sec. 5. "The board of commissioners shall appoint expert cotton graders, whose compensation shall be fixed by the board, and the said cotton graders shall be subject to removal by the board of commissioners whenever, in their judgment, the public interest demands it.

Sec. 6. "The State warehouse commission is empowered to acquire such property as they may deem necessary to carry out the purposes of this act, such property to be acquired by lease or purchase, and said commission is empowered to establish a compress in connection with said warehouse system at any point or points in this State where, in the judgment of said commission, it is necessary or practicable to carry out the purposes of this act.

Sec. 7. "All lint cotton properly baled and such other commodities as the commission deem proper shall be received for storage at said State warehouses, and the charges for same shall be fixed by the State warehouse commission. Each bale of cotton shall be weighed, graded and numbered so as to be identified at all times, the grades to be according to the standard grades adopted by the United States government. The person depositing the cotton or other commodities shall be given a receipt from the State warehouse commission, signed by the manager of the warehouses in which the cotton or other commodity is stored,

which receipt shall give the weight, grade and number of each bale of cotton or description of other commodity. The said receipts to be transferable only by written assignment, and the cotton or other commodities which it represents deliverable only upon the production of the original receipt, which is to be marked 'cancelled' when the cotton or other commodity is taken from the warehouse. All cotton or other commodities on storage shall be fully insured.

Sec. 8. "The State warehouse commission is hereby and herein authorized and empowered to issue coupon bonds in an amount not to exceed $250,000, in denominations not less than $500 each, and running for a term of thirty (30) years from the date of issue, bearing interest at a rate not to exceed six (6%) per cent. per annum, the interest on said bonds to be payable semiannually, and to execute as security for said bonds a mortgage or deed of trust on any real estate said commission may then own, with the right to said commission to retire by purchase any or all of said bonds at the end of twenty (20) years from the date of issue, the proceeds of said bonds to be used only for carrying out the objects and purposes of this act. In the meantime and until said commission shall find itself able to issue and negotiate the sale of said bonds as herein provided, it shall have power and authority to borrow money upon the notes of said commission not exceeding the sum of $250,000, said notes to run for not exceeding five (5) years, and to bear interest at a rate not exceeding six (6%) per cent. per annum, said notes being subject to renewal from time to time in the discretion of said commission, and the proceeds of said notes to be used in carrying out the objects and purposes of this act, and that as security for the money so borrowed on said notes said commission shall have the right to pledge by way of mortgage or deed of trust any property, real, personal or mixed, which it may then own: *Provided,* That said notes shall be taken up and retired when the bonds herein provided for have been issued, negotiated and sold: *Pro-*

*vided, further,* That the bonds and the notes herein provided to be issued are not to be a debt or obligation of the State of South Carolina: *Provided, further,* That nothing contained in this section is intended to prohibit said commission from borrowing temporarily, from time to time, on its notes, such amounts of money, not exceeding $20,000, as it may find necessary for the proper conduct of the business of said commission.

Sec. 9. "In fixing the charge for handling and storing cotton, the commission shall, in addition to providing a sinking fund to retire the bonds provided in section 8, also provide a sinking fund for the retirement of the amount advanced by the State, in fifty years.

Sec. 10. "The charges on cotton shall, after the system herein provided for has been put into operation, cover all current operating expenses, it being the intention of this act to make this system self-sustaining and at the same time give storage at actual cost as nearly as practicable.

Sec. 11. "The warehouse commission shall have the power to acquire, by lease, any standard-built cotton warehouse in the several towns of the State and operate them in all respects, under the provisions of this act, as applied to the State warehouse. That each commissioner, when elected or appointed under this act, before entering upon the duties herein imposed, shall execute to the State his official bond in the sum of $25,000 each for the faithful performance of their duties.

Sec. 12. "And the managers, graders, or other officers at any warehouse operated by the State, shall execute such bonds for the faithful performance of their duties as may be required by the State warehouse commission. The premiums on all bonds required of officers and employees under the terms of this act shall be paid out of the funds of the commission.

Sec. 13. "Any person offering cotton for sale in the open market can have his cotton weighed and graded at any

warehouse operated by the State, and shall receive his certificate, setting forth the number, weight and grade of each bale, the fee for such services not to exceed the sum of twenty-five cents for each bale so weighed and graded.

Sec. 14. "The compensation of the chairman shall be $2,100 per annum, and the compensation of the other members of the board shall be $6.00 per day for each day's attendance and two and one-half (2½) cents per mile for each mile actually traveled, and other necessary expenses actually incurred in the discharge of their duties hereunder.

Sec. 15. "The State board shall make an annual report of the operations of the warehouse system to the General Assembly.

Sec. 16. "The sum of $5,000 is hereby appropriated for the contingent expenses of said board and $250,000, divided into two equal annual installments of $125,000 in 1912 and $125,000 in 1913, to carry out the purposes of this act, is hereby appropriated: *Provided,* That the attorney general of the State immediately after the approval of this act shall institute in the Supreme Court a proceeding against the said commission for the purpose of determining the constitutionality of this act, and that no part of the moneys herein and hereby appropriated shall become available until the termination of said proceedings.

Sec. 17. "This act shall go into effect immediately upon its approval by the governor."

*Attorney General J. Fraser Lyon,* for petitioner, cites: *State cannot engage in any business except in the exercise of the police power:* 41 S. C. 220; 42 S. C. 223; 124 Mich. 679; 33 S. C. 1. *The appropriation for the tax is not for a public purpose:* 4 Am. Rep. 413; Dillon, sec. 319; 1 Cooley on Tax 206; 23 S. C. 57; 111 Mass. 454; 20 Wall. 655; 124 Mich. 674.

*Messrs. Stevenson & Prince* and *John L. McLaurin,* contra.

*Messrs. Stevenson & Prince* cite: *The act is an exercise of the police power:* 85 S. C. 188; 143 U. S. 517; 79 S. C. 316; 30 S. C. 585; 10 Rich. 491. *It is for the public benefit not prohibited by the Constitution:* 111 U. S. 371; 94 U. S. 310; 14 L. R. A. 478; Fund on Police Power, secs. 58, 59, 12, 22.

July 19, 1912.  The opinion of the Court was delivered by

Mr. CHIEF JUSTICE GARY.  This is a petition to the Court, in the exercise of its original jurisdiction, in which the petitioner prays, that an act of the legislature, entitled, "An act to create and operate a State warehouse system, for storing cotton and other commodities," be declared unconstitutional, and that the respondents be enjoined, from attempting to enforce its provisions.

The return of the respondents, to the rule to show cause, why the prayer of the petitioner should not be granted, was formal, and merely submitted the questions involved, to the consideration of the Court.

A copy of the act will be set out, in the report of the case.

The circumstances under which the Court, should declare a statute unconstitutional; the police power, and the unlimited power of the legislature, except when controlled by constitutional provisions, are discussed at length, in the case of *State* v. *Aiken,* 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345; and that case renders unnecessary the further discussion, in a general way, of these questions, in this proceeding.

The grounds upon which the petitioner contends that the act is unconstitutional, are designated by the letters a, b, c, d, e, f, g and h, and will be considered in regular order.

*a.* "It appropriates public revenues to private purposes, and provides that the State, through her public officers, engage in an enterprise, in no way incident or relating to any governmental function or matter, the warehouse system provided for therein, being solely for the benefit of private individuals, and is violative of section 2, article X, of the Constitution."

The ultimate solution of this proposition, depends upon the question, whether the said act can be construed as a police regulation.

The title of the act shows, that its object was to create and operate, a State warehouse system for storing cotton and other commodities.

It will be observed, it was not the intention of the statute that the State should become the owner of the cotton or other commodities, deposited in the warehouse; nor that the State should operate the warehouses, for the purpose of profit.

The object of the act may be stated in few words. The cotton growers in this State, and the merchants, to whom a large portion of the staple is delivered, in payment of indebtedness for supplies consumed in its production, are, as a rule, unable to hold it, but for a short time, after the crop is gathered; and, a forced sale means a sacrifice of profits to them. Knowing this fact certain speculators, by combination of capital and manipulation of the money market, are able, for a short time, by reducing the circulating volume of money, to depress the cotton market, and fix an unreasonably low price, for the cotton crop. They would not, however, be able to control the price, but for a short time, and the object of the statute was to give protection to the public, during this period, from an enforced sale of the cotton crop. We deem it unnecessary to discuss at length, the manner in which this unreasonable depression in price, affects not only the cotton grower, but the people generally, as well as every department of the government, and every

governmental agency in the State. In passing this statute the State was clearly within the exercise of its police power, which in its last analysis simply means the State's right of self-defense.

The case of *Barfield* v. *Mercantile Co.,* 85 S. C. 186, and the cases therein cited, tend to show that the act in question, was for a public and not a private purpose.

*b.* "It provides that the State shall engage in a private business, not incidental or necessary to the exercise of the police power."

What has just been said disposes of this ground.

*c.* "It provides for an issue of bonds, and an increase of the public debt, without first submitting the question as to the creation of such new debt, to the qualified electors of this State at a general election, in violation of section 2. article X, of the Constitution."

Section 2, article X, of the Constitution, is as follows:

"'To the end that the public debt of South Carolina, may not hereafter be increased, without the due consideration and free consent of the people of the State, the General Assembly is hereby forbidden to create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement or otherwise, except for the ordinary and current business of the State, without first submitting the question, as to the creation of such new debt, guaranty, endorsement or loan of its credit, to the qualified electors of this State, at a general State election; and unless two-thirds of the qualified electors of this State, voting on the question, shall be in favor of increasing the debt, guaranty, endorsement or loan of its credit, none shall be created or made."

. There are two reasons why this ground must be sustained:

1. The building of warehouses, is not one of the ordinary functions of government; therefore, the issuing of bonds for such purpose cannot be properly regarded as embraced

within the words, "the ordinary and current business of the State."

2. It appears upon the face of the statute, that the bonds were not intended to be a debt or obligation of the State. Bonds can only be issued under section 2, article X, of the Constitution, when a debt or obligation of the State is thereby created.

*d.* "It is discriminatory and denies the equal protection of the law, in that no provision is made for expert grading, classifying, weighing, or otherwise putting in a marketable condition any commodity other than lint cotton, and does not compel the acceptance for storage of any commodity other than lint cotton."

· The petitioner does not state, whether the statute denies the equal protection of the laws, under the State or Federal Constitutions. The rule in such cases, arising under the Federal Constitution, is thus clearly stated by Mr. Justice Van Devanter, in *Lindsley* v. *N. C. Gas Co.*, 220 U. S. 61:

"1. The equal-protection clause of the fourteenth amendment, does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis, does not offend against that clause, merely because it is not made with mathematical nicety, or because in practice, it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts, at the time the law was enacted, must be assumed. 4. One who assails the classification in such a law, must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

This language also shows, that the classification is not repugnant to section 5, article I, of the State Constitution,

which provides, that no person shall be denied the equal protection of the laws.

The case of *State* v. *Aiken,* 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345, shows that when a statute is declared to be a police regulation, and the State takes charge of the business, the objection that it is a monopoly cannot properly arise.

*e.* "It provides for issuing receipts for commodities stored in warehouses, transferable by written assignment, which receipts are certificates of indebtedness, issued contrary to section 7, article X, of the Constitution."

Section 7, article X, of the Constitution, is as follows:

"No scrip, certificate, or other evidence of State indebtedness shall be issued, except for the redemption of stock bonds, or other evidence of indebtedness previously issued, or for such debts as are expressly authorized in this Constitution."

Section 7 of the statute under consideration, contains these provisions:

"The person depositing the cotton or other commodities, shall be given a receipt from the State warehouse commission, signed by the manager of the warehouses, in which the cotton or other commodity is stored, which receipt shall give the weight, grade and number of each bale of cotton, or description of other commodity. The said receipts to be transferable only by written assignment, and the cotton or other commodities which it represents, deliverable only upon the production of the original receipt, which is to be marked 'cancelled,' when the cotton or other commodity, is taken from the warehouse."

It is only necessary to refer to the foregoing language of said section, to show that the receipt therein mentioned, in no respect whatever, partakes of the characteristics of "scrip, certificate or other evidence of State indebtedness."

*f.* "It makes appropriations for both the years 1912 and 1913, contrary to the provisions of section 2, article X, of the Constitution."

Section 2, article X, of the Constitution, is as follows:

"The General Assembly shall provide for an annual tax sufficient to defray the estimated expenses of the State for each year, and whenever it shall happen, that the ordinary expenses of the State for any year, shall exceed the income of the State for such year, the General Assembly shall provide, for levying a tax for the ensuing year sufficient, with other sources of income, to pay the deficiency of the preceding year, together with the estimated expenses of the ensuing yar."

Section 16 of said act provides, that "the sum of $250,000, divided into two equal annual installments of $125,000 in 1912 and $125,000 in 1913, to carry out the purposes of this act, is hereby appropriated."

If the legislature contemplated the expenditure of the $250,000 during the year 1912, then it was necessary to include the whole amount in the estimated expense of the State for 1912, in providing for the annual tax for that year. If, however, it was not contemplated to expend $125,000 thereof, until 1913, then that sum could only be properly included, in the estimated expenses for the year 1913, in making provision for the annual tax for that year.

Therefore, the appropriation of $125,000 of said amount, was in violation of the Constitution.

*g.* "It attempts to apply a tax to an object not stated in the law, and thereby violates section 3, article X, of the Constitution."

Section 3, article X, of the Constitution, is as follows:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object the tax shall be applied."

Section 16 of the act appropriates $250,000 to carry out the purposes thereof. We have already shown, that $125,000 of said amount was not appropriated in the manner provided by law. If it should hereinafter be determined, that the entire act must be declared null and void,

then it will present a mere abstract question, whether the remaining $125,000 was properly appropriated.

*h.* "The said act, together with section 40 of 'An act to make appropriation to meet the ordinary expenses of the State government for the fiscal year, commencing January 1, 1912, and to provide for a tax sufficient to defray the same,' provides for pledging the credit of the State, for the benefit of private individuals, owners of lint cotton in bales, in violation of section 6, article X, of the Constitution of South Carolina; that section 40 of said appropriation act is hereto attached and made a part of this petition, and marked Exhibit B."

Section 40 of the act just mentioned is as follows:

"That in anticipation of the taxes hereinbefore levied, the governor and the State treasurer and the comptroller general be, and they are hereby, empowered to borrow, on credit of the State, so much money, from time to time, as may be needed to meet promptly, at maturity, the interest which will mature on the first day of July, and on the first day of January, of each year, on the valid debt of the State, and to pay the current expenses of the State government, for the present fiscal year, and for pensions, and for carrying out the provisions of an act to establish a State warehouse commission, if the same be declared constitutional by the Supreme Court of the State: *Provided,* That the sum so borrowed, shall not exceed six hundred thousand ($600,000) dollars."

Section 6, article X, of the Constitution, provides, that "the credit of the State shall not be pledged or loaned, for the benefit of any individual, company, association or corporation; and the State shall not become a joint owner of, or stockholder in, any company, association or corporation. * * * "

This ground is disposed of, by the conclusion that the act was intended as a police measure, and, therefore, necessarily related to a subject, that was public in its nature.

The last question to be determined is, whether the 2 portions of the act that have been declared unconstitutional, render it null and void in its entirety.

The rule is thus stated in Cooley's Con. Lim. (6th ed.), pages 211 and 212, and quoted with approval in *Utsey* v. *Hiott,* 30 S. C. 360, 9 S. E. 338, and *Murphy* v. *Landrum,* 76 S. C. 21, 56 S. E. 850:

"If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining, whether the good and bad parts of the statute, are capable of being separated within the meaning of the rule. If a statute attempted to accomplish two or more objects, and is void as to one, it may still be, in every respect, complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the objects, without the aid of the invalid portion, and if they are so mutually connected with and dependent upon each other, as conditions, considerations or compensations for each other, as to warrant the belief, that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions, which are thus dependent, conditionally or connected, must fall with them."

Tested by these principles, the entire act must be declared unconstitutional.

Of course; the conclusion that the statute under consideration, is void in its entirety, does not mean that in its general scope, it is not a police regulation, but that it cannot be given effect in its present form, by reason of its failure, in certain respects, to comply with the requirements of the Constitution.

It is the judgment of this Court, that the act herein mentioned is null and void, and that the respondents' be enjoined, from attempting to carry its provisions into effect.

MR. JUSTICE HYDRICK *concurs in the result.*

MR. JUSTICE WOODS *did not sit.*