**VETTE v. CHILDERS, State Auditor, et al.**

No. 14627—Opinion Filed Feb. 12, 1924.

Rehearing Denied July 1, 1924.

(Syllabus.)

1. **Injunction—Right of Taxpayer to Enjoin Misappropriation of State Funds.**

A resident taxpayer has an equitable ownership in funds in state treasury, and although no private interest, he may invoke the interposition of a court of equity to restrain the payment of money appropriated by the Legislature in violation of the Constitution.

2. **Same—Illegal Appropriation as Basis for Action.**

The unlawful appropriation of public funds is an invasion of the legal rights of a taxpayer, and a suit may be maintained to restrain such expenditure without waiting for the state officers to take further steps toward the expenditure of the funds appropriated.

3. **Statutes—Validity of Appropriation Act —Public Purpose.**

Under section 14, art. 10, of the Constitution no tax can be levied and collected except for public purposes, and under section 19, art. 10, of the Constitution, no tax levied and collected for one purpose shall ever be devoted to another purpose. It follows, therefore, that no appropriation of funds in the state treasury can be made for other than a public purpose.

4. **Same—"Public Purpose."**

Under sections 14 and 19, art. 10, of the state Constitution money in the state treasury can only be appropriated and used for public purposes, and in order to constitute a public purpose within the meaning of this constitutional provision, such purpose must not only be affected with a public interest, but must be performed by the state in the exercise of its governmental functions, and public funds cannot be used to assist individuals in a business which is affected with a public interest, as the Constitution neither authorizes nor contemplates the exercise of governmental functions by any person, association, or corporation, except the duly constituted officers of the state.

5. **Same—Invalidity of State Appropriation for Warehouse System Owned by Others.**

Section 18 of the act of the Legislature of 1923, entitled: "An Act providing for the incorporation, organization, and operation of a warehouse system for the state of Oklahoma, making an appropriation therefor, and declaring an emergency," which appropriates out of any funds in the state treasury, not otherwise appropriated, the sum of $1,250,000, or so much thereof as may be necessary to be invested in first mortgage bonds on warehouse property owned, operated, and controlled by farmers' co-operative associations for the purpose of assisting in the establishment of a state warehouse system for the storage of grain, cotton, broomcorn, hay, wool, and any or all other agricultural, live stock, or poultry products, and poultry, is an appropriation for the purpose of assisting a group of individuals in owning and operating a warehouse system, and is not an appropriation of money for public purposes as required by sections 14 and 19 of the state Constitution, and such appropriation is therefore unconstitutional and void.

Error from District Court, Oklahoma County; William H. Zwick. Judge.

Action by John Vette against Charles C. Childers, State Auditor, and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

H. O. Glasser and Nathan Scarritt, for plaintiff in error.

George F. Short, Atty. Gen., and C. W. King, Asst. Atty. Gen., for defendants in error.

COCHRAN, J. This action was instituted by John Vette against the State Auditor and State Treasurer, to restrain them from paying out of the funds in the treasury of the state of Oklahoma, certain money appropriated by Senate Bill No. 37, chap. 22, Session Laws 1923, for the purpose of assisting in the establishment of a state warehouse system.

Before determining the merits of this case it is necessary to consider a preliminary question presented by counsel for the defendants in error. It is contended that an injunction will not lie upon relation of a private taxpayer to restrain the misappropriation of public funds unless the taxpayer can show some injury special in its nature and different from that inflicted upon the community or state at large. This suit was instituted by John Vette, as a taxpayer, to enjoin the payment of funds out of the state treasury, under an appropriation made by the Legislature, which is alleged by the taxpayer to be in violation of various constitutional provisions. The defendants in error rely on

Thompson et al. v. Haskell, Governor, 24 Okla. 70, 102 Pac. 700, in which case it was said:

"When a party seeks the intervention of a court of equity to stay the administration and execution of the law by the executive department of state, he must bring himself clearly within the rule, and show an irreparable injury or otherwise a clear right thereto, before equity will lend its strong arm to stay the administration or work of the co-ordinate branch of the government."

In that case, the question under consideration was the right of the taxpayer to maintain an action for the purpose of contesting an election, and it was held that the taxpayer could not maintain the action, but the court referred to the case of Kellogg v. School District No. 10, 13 Okla. 285, 74 Pac. 110, and said:

"The Kansas rule was to the effect that one taxpayer could not enjoin a tax levied against another taxpayer; that each must sue for himself, either in an action brought by himself alone or in an action brought by himself and others with a like interest. And this appears to be the rule recognized in the case of Stiles, Treasurer, v. City of Guthrie, 3 Okla. 39, 41 Pac. 388, but the case of Kellogg v. School District No. 10, supra, seems to have extended this rule so as to permit a taxpayer to maintain an action to prevent the levying of a tax unauthorized, or the disposition of public funds other than as authorized by law."

Thompson et al. v Haskell, Governor, supra, therefore, does not support the contention of the defendants in error, and the rule announced in the Kellogg Case has never been overruled. It is contended by the defendants in error, however, that although that rule applies to municipal corporations, it can have no application to an injunction brought against state officers, and they rely upon the statement made in Pomeroy on Equity Jurisprudence (4th Ed.) vol. 4, sec. 1748, as follows:

"Hence, it would seem that an injunction should not issue against a state officer unless some special and direct injury to the plaintiff is shown. It is clear that it should not issue to restrain state officers from erecting a public building at a place other than that prescribed by law, where no special injury is shown and the burden of taxation is not increased; nor to restrain a state grain inspector from employing deputies under an unconstitutional law, when this is not shown to cause any injury to the plaintiff."

In State v. Huston, 27 Okla. 606, 113 Pac. 190, the court said:

"However, the great weight of authority is that courts of equity will not restrain the action of state officers in misappropriating public funds merely on the relation of citizens and taxpayers, the executive law officers of the state being the proper parties to institute suits involving the disposition of the revenues of the state."

The language used in that opinion is clearly dicta, as the suit in that case was not instituted in the name of a taxpayer. That case does not overrule Kellogg v. School District No. 10, supra, which has been followed in numerous cases, some, of which are Town of Afton v. Gill, 57 Okla. 36, 156 Pac. 658; Sexton v. Smith, 32 Okla. 441, 122 Pac. 686; Perry v. Lobsitz, 35 Okla. 576, 130 Pac. 919; Greer v. Austin, 40 Okla. 114, 136 Pac. 590; Marlow v. School District, 29 Okla. 305, 106 Pac. 797. While none of these cases dealt with the misappropriation of funds by state officers, but only with misappropriation by officers of school districts and cities, the taxpayer has the same right to prevent, by injunction, the misappropriation of funds in the state treasury under an unconstitutional act of the Legislature. In State ex rel. Cruce v. Cease, 28 Okla. 271, 114 Pac. 251, and numerous other cases, this court has held that an act of the Legislature must be treated and acted upon by subordinate executive officers as constitutional and legal until the unconstitutionality and illegality have been judicially established, and, in view of this holding, it is difficult to understand how the Attorney General could institute and prosecute an action for the purpose of determining the unconstitutionality of this act of the Legislature. We are of the opinion that the correct rule is announced in Fergus v. Russell (Ill.) 110 N. E. 130, in the first syllabus, as follows:

"Because of their equitable ownership of the funds in the state treasury, and their liability to replenish the treasury for a deficiency which would be caused by a misappropriation, taxpayers may maintain a bill in equity to restrain the payment from the state treasury of moneys appropriated by the General Assembly on the ground that such appropriations are unconstitutional; there being no distinction between suits to restrain the payment of funds from a municipal treasury and a suit to restrain payments from the state treasury, as a municipality, in exercising the delegated authority to raise funds by taxation, is exercising a part of the power of the state, and the sovereignty of the state is no less involved, except in degree, in a taxpayer's suit to enjoin the misappropriation of the funds of a municipality than in a suit to enjoin the misappropriation of the public funds in the state treasury."

A full discussion of the question here in-

volved will be found in the note to Pierce v. Hagans (Ohio) 15 Am. & Eng. Ann. Cas. 1174.

The defendants in error contend, further, that the petition in this case fails to show that the plaintiff is entitled to equitable relief, as a court of equity will not ordinarily grant relief against a threatened invasion of legal rights. The unlawful appropriation of public funds is an invasion of the legal rights of a taxpayer and a suit may be maintained to restrain the expenditure of funds under an unlawful appropriation without waiting for the state officers to take further steps toward the expenditure of the funds appropriated.

The plaintiff in error contends that section 18 of the act of the Legislature is in violation of several provisions of the state Constitution, but the only two provisions which we shall consider are section 14, art. 10, which provides:

"Taxes shall be levied and collected by general laws, and for public purposes only, except that taxes may be levied when necessary to carry into effect section 31 of the Bill of Rights"

—and section 19, art. 10:

"Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city or town, or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

The act of the Legislature under consideration is entitled: "An Act providing for the incorporation, organization, and operation of a warehouse system for the state of Oklahoma, making an appropriation therefor, and declaring an emergency." The act provides that any farmers' co-operative association today take advantage of the provisions of the act, and that the term "Farmers' Co-operative Association" shall mean: (1) Any corporation organized by 50 or more growers or producers of agricultural products, under the provisions of chapter 147 of the Session Laws of Oklahoma, 1919; (2) any corporation organized by 50 or more such persons under the other co-operative laws of the state of Oklahoma, for the purpose of buying, building, maintaining or operating a warehouse or warehouses, cold storage or curing plant or plants, for the storing, handling or marketing of agricultural products; (3) any subsidiary corporation organized, owned and controlled by any corporation as aforesaid.

After making provision for the licensing and regulating of warehouses operated under this act, section 18 of the act provides:

"For the purpose of assisting in the establishment of a state warehouse system, there is hereby appropriated out of any funds in the state treasury, not otherwise appropriated, the sum of $1,250,000, or so much thereof as may be necessary, said sum so appropriated to be prorated as follows: The sum of $750,000, to be available during the fiscal year ending June 30, 1924, and the sum of $500,000, to be available during the fiscal year ending June 30, 1925. Said sum herein appropriated shall be placed in the revolving fund to be known as the 'State Warehouse Revolving Fund,' and shall be under the control of the State Board of Agriculture, and be handled and used and managed as provided herein:

"The State Board of Agriculture is hereby authorized to invest said funds, or any part thereof, in first mortgage bonds on local warehouse properties owned by any farmers' co-operative association organized as provided by law; said investment or investments so made shall not exceed fifty (50%) per cent. of the appraised value of any such warehouse property, exclusive of the value of the land on which said warehouse is located. The State Board of Agriculture may invest not more than fifty (50%) per cent. of the funds appropriated herein in first mortgage bonds on terminal warehouse properties owned by any farmers' co-operative association as provided by law, said investment so made shall not exceed sixty (60%) per cent. of the appraised value of such warehouse property, exclusive of the value of the land on which said warehouse is located. Said appraisements shall be made by the State Board of Agriculture. Said investments shall not be made for a longer term to any co-operative association organized under chapter 22, of the Session Laws of Oklahoma 1917, than the life of their contract with their members, and to no other co-operative company for a term of more than 20 years, nor at a higher rate than five (5) per cent. per annum, provided, however, that none of the said revolving fund shall be used for salaries, expenses, or purposes other than loans."

Under the provisions of the act, the warehouses operated under its provisions are to be owned by farmers' co-operative associations and are to be managed, operated, and controlled by such associations, subject, however, to the supervision provided by said act.

Under this act the functions of the state are two-fold: (1) The supervision of the warehouse; and (2) the investment of funds appropriated by the act in first mortgage bonds on warehouse properties owned by the co-operative associations.

The plaintiff in error seeks to have that

portion of the act which appropriates funds of the state for the purpose of investment in first mortgage bonds on warehouse property owned by the farmers' co-operative associations declared unconstitutional. The defendants in error contend that section 14, art. 10, of the Constitution, has no application, because no taxes are to be levied for the purpose of raising the funds appropriated by the act; that the appropriation is out of funds which were in the state treasury at the time of the passage of the act, to wit, February 26, 1923.

It is unnecessary to determine whether it is true that this appropriation was out of surplus funds in the treasury, or was an appropriation to be raised by taxes levied for the fiscal years 1923-24 and 1924-25. When we consider sections 14 and 19, article 10, together, it is apparent that taxes can be levied in this state only for public purposes, and funds in the state treasury, which have been raised by taxes for public purposes, cannot be devoted to any other purpose. While a surplus may exist in the state treasury from time to time, such surplus results only from the levy and collection of a tax. It may result from the collection of an ad valorem tax or from some one of the many direct taxes, which are imposed under the law, but it invariably results from some form of levy and collection of tax, and under section 14, the levy can only be for public purposes, and, having been collected for public purposes, is available only for the purpose of reducing the appropriation for such fund for the ensuing year and thereby diminishing the rate of levy for such ensuing year; for under section 19, it is provided: "No tax levied and collected for one purpose shall ever be devoted to another purpose."

It may be said, then, that no appropriation can be made for other than a public purpose. The question is: "Is the appropriation of $1,250,000 to be used for investment in first mortgage bonds on warehouse property, owned and operated and controlled by farmers' co-operative associations for the purpose of assisting in the establishment of a state warehouse system for the storage of grain, cotton, broomcorn, hay, wool, and any or all other agricultural, live stock, or poultry products, and poultry, for a public purpose, within the contemplation of the foregoing provisions of the Constitution limiting the expenditure of public funds to public purposes? It may be conceded that the operation and control of a system of warehouses for the storage of agricultural products, such as provided under the terms of this act, is a business which is affected with

a public interest and therefore subject to state regulation and control, but it does not follow that a business affected with a public interest, and as such, subject to state regulation and control, can be assisted by an appropriation of the funds from the treasury of the state. If so, various public utility corporations which are owned and operated by private corporations under the regulation and control of the state government might also be assisted by appropriations of funds raised by taxing the citizens of the state.

The appropriation provided in section 18 of the act under consideration is not for purposes of regulation and control of the enterprise, but is to assist in establishing a system of warehouses to be owned, operated, and controlled by associations of individuals. While the establishment and operation of the system of warehouses might ultimately result in a benefit to the entire farming class of the state and by reason of the encouragement given to this industry might result in a general benefit to the entire public, the direct object of this appropriation is for the assistance of the group of individuals who shall own, operate, and control the warehouses.

It is unnecessary for us to determine whether an appropriation for the establishment of a system of warehouses to be owned, operated, and controlled by the state would be valid, either on the theory that operation of the warehouses is a valid exercise of the police power of the state, as was held in Lyman v. Stewart (Mont.) 190 Pac. 129, or whether the operation and control of such a system by the state would be held to be engaging in a business for public purposes as authorized by section 31, article 2, of the Constitution of Oklahoma, which provides:

"The right of the state to engage in any occupation or business for public purposes shall not be denied nor prohibited, except that the state shall not engage in agriculture nor any other than educational and scientific purposes and for the support of its penal, charitable, and educational institutions"

—as was held in Green v. Frazier (N. D.) 176 N. W. 11; or whether the operation and control of such system would be considered a valid exercise of general governmental functions for public purposes, as was held in State of Washington v. Claussen (Wash.) 188 Pac. 538; State ex rel. Lyon v. State Warehouse Com. (S. C.) 75 S. E. 392.

In each of those cases the fund appropriated was to enable the state to perform a governmental function which it had undertaken in the exercise of its sovereign power, and having determined that the various en-

terprises were valid exercises of governmental functions, the appropriation was sustained. In the instant case a similar situation would be presented, if the act had provided that the warehouses were to be owned and operated by the state. It would then be necessary to ascertain whether such would be a valid governmental function, and if it should be determined that it was a valid governmental function, then under the above authorities an appropriation would be sustained, as the appropriation would be for a public purpose. The act under consideration, however, provides for an appropriation to assist in the establishment of a warehouse system, owned, operated, and controlled, subject to state supervision, by private parties and to be operated for the direct profit and benefit of those individuals. While the learned trial judge was of the opinion that the act was for the benefit of the farmer and thus benefited the public, and the appropriation was for that reason for a public purpose, we are of the opinion that the associations of individuals to whom the fund is to be loaned are the ones directly benefited by the act and with only a prospective and indirect benefit to the public.

Conceding that the operation and control of a warehouse system for the storage of agricultural products would be a proper governmental function, the act under consideration does not appropriate the money for the performance of that function, but makes the appropriation for the purpose of assisting a group of individuals in performing this function, which if performed by the government might be a valid exercise of the sovereign power of the state.

In Loan Association v. Topeka, 20 Wall. 655, the Supreme Court of the United States in discussing the question under consideration held as follows:

"There are limitations of such powers which arise out of the essential nature of all free governments; implied reservations of individual rights without which the social compact could not exist, and which are respected by all governments entitled to the name. Among these is the limitation of the right of taxation, that it can only be used in aid of a public object, an object which is within the purpose for which governments are established; it cannot, therefore, be exercised in aid of enterprises strictly private, for the benefit of individuals, though in a remote or collateral way the local public may be benefited thereby. A statute which authorizes a town to issue its bonds in aid of the manufacturing enterprise of individuals is void, because the taxes necessary to pay the bonds would, if collected, be a transfer of the property to individuals to aid in the projects of gain and profit to

others, and not for a public use, in the proper sense of that term."

To the same effect are the following: Allen v. The Inhabitants of Joy, 60 Me. 124; Jenkins v. Anderson, 103 Mass. 97. In State v. Donald (Wis.) 151 N. W. 331, the court said:

"The purpose for which taxes may be levied are denominated public purposes, not in the broad general sense, but in the constitutional sense of such statewide purposes as are contemplated by the functions of government under the system created by the fundamental law. Where there is no public purpose in the sense of carrying on the machinery of government, there is no power to tax."

So in the case at bar the appropriation is not for the purpose of carrying on any of the machinery of government for the purpose of enabling the government to perform any of its governmental functions, but is solely for the purpose of enabling individuals to carry on a business which if conducted by the state might be construed to be a proper governmental function.

In Green v. Frazier (N. D.) 176 N. W. 11, the court said:

"A public purpose or public business has for its objective the promotion of the health, safety, morals, general welfare, security, prosperity and contentment of all the inhabitants or residents within a given political division, as for example, a state, the sovereign powers of which are exercised to promote such public purpose or public business."

In that case the Supreme Court of North Dakota had under consideration the acts of the Legislature making appropriations for the state mill and elevator, state bank, and the state home building association, all of which were owned, operated, and controlled by the state, and that court held that in owning, operating, and controlling the same, the state was performing a governmental function and an appropriation therefor was valid; and in holding that the decision in that case was not in conflict with Loan Ass'n v. Topeka, supra, the court said:

"That decision, however, does not apply in the case at bar. The industries under consideration in the present case are all public industries belonging to the state of North Dakota. None of them are private industries or enterprises, but, on the contrary, are public enterprises and businesses exclusively owned and operated by the state of North Dakota in its sovereign capacity, for the use and benefit of all the people of the state—in other words, for a public purpose."

It is our opinion that the rule announced

in Loan Ass'n v. Topeka, supra, is applicable to the act which we here have under consideration, and although the authorities may differ greatly in regard to what constitutes a public purpose, changed conditions may result in courts determining acts to be for a public purpose today which were not so considered at the time of the rendition of some of the opinions which have been referred to herein. We see no reason for departing from the fundamental principles announced in Loan Ass'n v. Topeka, supra, and we are of the opinion that it would be extremely dangerous to permit an appropriation of public funds for the assistance of a group of individuals, who are under neither oath nor bond to the state in carrying out a private business enterprise, even though that enterprise might be of quasi-public character and one which would remotely promote the public welfare, for our Constitution neither authorizes nor contemplates the exercise of governmental functions by any person, association, or corporation, except the duly constituted officers of the state.

For the reasons stated, we are of the opinion that section 18 of the act under consideration is unconstitutional. The judgment of the trial court is reversed, and the cause remanded, with directions to proceed further in accordance with the views herein expressed.

KENNAMER, NICHOLSON, HARRISON, MASON, and LYDICK, JJ., concur. JOHNSON, C. J., and McNEILL and BRANSON, JJ., dissenting.