Dear Representative Roach,
¶ 0 This office has received your request for an official Attorney General Opinion, in which you ask, in effect, the following question:
 Does either the Oklahoma Constitution or State law prohibit the Commissioner of Public Safety from using the Department of Public Safety's airplane to fly the Governor and/or his immediate family on trips that are unrelated to official State business?[1]
 I. CONSTITUTIONAL REQUIREMENT THAT STATE FUNDS BE APPROPRIATED FOR PUBLIC PURPOSES Public Purpose Not to be Construed in a Narrow or Restrictive Sense
¶ 1 Under the provisions of Article 10, § 14 of the Oklahoma Constitution, taxes must be levied and collected for public purposes only, that section, in pertinent part provides:
 Taxes shall be levied and collected by general laws, and for public purposes only. . . .
Okla. Const. art. 10, § 14 (emphasis added).
¶ 2 In 1924, in Vette v. Childers, 228 P. 145 (Okla. 1924), examining the meaning of "public purposes" in Article 10, § 14, the Oklahoma Supreme Court held that a bill making an appropriation to fund investments in mortgage bonds of farming coop warehouses did not constitute a public purpose. The challenged appropriation was not for the purpose of regulating and controlling warehouse enterprises, but rather was to assist in establishing a system of warehouses to be owned, operated and controlled by associations of individuals — farming coops.228 P. at 148. The Vette Court found that while the operation and control of a warehouse system for the storage of agricultural products, "if performed by the government, might be a valid exercise of the sovereign power," the operation and control of such system by private entities, was not a governmental function.Id. As explained more completely in the Court's fourth syllabus, the Vette Court concluded that in order to constitute a public purpose, within the meaning of Article 10, § 14, "such purpose must not only be affected with a public interest, but must be performed by the state in the exercise of its governmental functions, and public funds cannot be used to assist individuals in a business which is affected with the public interest, as the Constitution neither authorizes nor contemplates the exercise of governmental functions by any person, association or corporation, except the duly constituted officers of the state." 228 P. at 145. A like conclusion was reached in Veteransof Foreign Wars v. Childers, 171 P.2d 618 (Okla. 1946), in which the Court struck down a statute which made an appropriation to the Veterans of Foreign Wars for the employment of a service officer to assist members of the armed forces, veterans, their families and dependents.
¶ 3 Unlike the situations presented in either Vette orVeterans of Foreign Wars, where the challenged actions were not being performed by the State, the matter you inquire about is being performed by a State entity, the State Department of Public Safety. Thus, the constitutional question you present will not be decided on the basis of who is performing the function, but rather will be decided on the basis of whether the function is a "public purpose" as that term is used in Article 10, § 14 of the Oklahoma Constitution.
¶ 4 The Oklahoma Supreme Court has given a broad construction to public purpose. In 1938, in Helm v. Childers, 75 P.2d 398
(Okla. 1938), the Court held that "public purposes" is not to be given a narrow or restrictive construction and that when the line of distinction between that which is allowable under the public purpose restriction and that which is not is faint and shadowy, the courts will accept the Legislature's determination as final. The argument advanced in Helm was that the State Travel and Tourist Bureau — a new concept in the 1930's — was not a proper governmental function. In rejecting this assertion, the Court stated:
 The meaning of "public purposes" for which governmental exaction of money may be had is not
within a narrow and restricted sense. At any rate the courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy. In such instances the decision of the Legislature is accepted as final. It is conceivable that a public benefit may be derived as a result of the legislation. The contention is without merit.
75 P.2d at 399 (emphasis added and citations omitted).
¶ 5 Using the same analysis, nine years later, in Wallace v.Childers, 180 P.2d 1005 (Okla. 1947), the Oklahoma Supreme Court again concluded that where the distinction between that which is allowable and that which is not is faint and shadowy, the decision of the Legislature is accepted as final. In Wallace,
the Court held that appropriating tax funds to the Fireman's Relief and Pension Fund was a proper public purpose. Later that same year, in Board of Commissioners of Marshal County v. Shaw,182 P.2d 507 (Okla. 1947), the Court — again using the same analysis — found that reimbursement of counties for injuries done to them by the disestablishment of a State prison farm was a proper public purpose. In reaching this conclusion, the Court noted that the determination whether a tax was for private or public purpose turned on the essential character or direct object of the law. 182 P.2d at 515.
 The Courts' Deference to the Legislature's Determination of Public Purpose
¶ 6 The direct object of the primary statute implicated by your inquiry, 47 O.S. 1991, § 2-101, is clear. As more fully discussed below, the direct object of the statutory duties of the Commissioner of Public Safety, under 47 O.S. 1991, § 2-101[47-2-101](b), is to provide for "the personal security and protection, transportation, and communication capabilities" of the Governor, the Lieutenant Governor and the Governor's immediate family.
¶ 7 In State ex rel. Lacy v. Jackson, 682 P.2d 218 (Okla. 1983), in holding that it was not a public purpose for a municipality to appropriate public funds for the printing and distribution of a newspaper published by a private entity, the Oklahoma Supreme Court quoted with approval from the United States Supreme Court's analysis in Citizens' Savings LoanAssociation of Cleveland v. City of Topeka, 87 U.S. (20 Wall.) 655 (1875). The embraced analysis concluded that "courts can only be justified in interposing when a violation of this principle [the principle that taxes may only be imposed for public purposes] is clear and the reason for interference cogent."682 P.2d at 221.
¶ 8 In requiring the Commissioner of Public Safety to provide for the personal security and protection, transportation, and communication capabilities of the Governor, the Legislature did not expressly limit the Commissioner's responsibility to circumstances in which the Governor is performing the duties of his office. Indeed, such a limitation would be inconsistent with the requirement to provide security for members of the Governor's immediate family, as they have no official duties to perform.
¶ 9 As will be more fully discussed below, in Part II of this opinion, an intention of the Legislature regarding any limitations on the Department of Public Safety's duty to provide for the Governor's transportation is not expressed. Yet, even if it were the clear intention of the Legislature to provide transportation for the Governor and his immediate family regardless of whether the transportation were related to the performance of duties of the office, we could not say, as a matter of law, that the public purpose requirement of Article 10, § 14 would be violated. This is so because the Legislature could have concluded that the public has an interest in seeing that the Governor and his family are protected, whether or not they are travelling on State business, and has a further interest in the Governor being able to quickly respond to emergencies, whether or not he is traveling on official business. If an emergency develops that demands the Governor's immediate attention at a different location, his ability to respond will clearly be quicker if he is not required to wait for a commercially scheduled flight, or required to take the time to locate and charter a private airplane. Additionally, the Department of Public Safety's ability to provide for the Governor's security and communication capabilities may also be viewed as enhanced if the Governor is traveling in a State-owned vehicle or aircraft which is pre-equipped with security and communication devices.
¶ 10 As is often the case, the line of distinction between that which is permitted and not permitted under the public purpose requirement of Article 10, § 14 is not a clear, sharp line. It is clear that the line exists and, if crossed, would result in a breach of our Constitution. Where the line is drawn, however, must be determined as a matter of fact and would be beyond the scope of an Attorney General's Opinion. We cannot say that providing the State's First Family with full-time transportation, whether or not on State business, would clearly be impermissible. Accordingly, under Article 10, § 14 of the Oklahoma Constitution, we must, under the teachings of the Oklahoma Supreme Courts, accept the Legislature's determination as final.
 II. LEGISLATION PROVIDING FOR THE GOVERNOR'S TRANSPORTATION Mandatory Duty of the Commissioner of Public Safety to Provide for the Governor's Transportation
¶ 11 At 47 O.S. 1991, § 2-101[47-2-101](b), the Commissioner of Public Safety is given the mandatory duty of providing for the Governor's personal security and protection, transportation, and communication capabilities. That subsection in pertinent part reads:
 The Commissioner of Public Safety shall provide personal security and protection, transportation,
and communications capabilities for the Governor, the Governor's immediate family, and the Lieutenant Governor. The Commissioner is authorized to provide necessary communications equipment to said persons even if said persons are not on state property or in state vehicles. The Commissioner of Public Safety is hereby authorized to purchase or lease and equip motor vehicles for the use of the Governor and Lieutenant Governor. The purchase or lease price of any such motor vehicles and equipment shall be paid from any appropriation for motor vehicles made to the Department of Public Safety.
74 O.S. 1991, § 2-101[74-2-101](b) (emphasis added).
¶ 12 As noted above, in imposing the mandatory duty to provide for the Governor's transportation, the Legislature has not expressly limited that duty to instances when the Governor is on official business. It would be difficult to imply such a restriction in light of the fact that the Legislature has provided that the Commissioner must provide transportation to members of the Governor's immediate family, who, of course, have no official duties to perform. In similar fashion, in authorizing the Department of Public Safety to purchase an airplane, nothing in the appropriation bill limited the use of that airplane to official business only.
 Appropriation Authorizing the Department of Public Safety to Secure an Airplane
¶ 13 The Oklahoma Legislature appropriated funds to the Department of Public Safety to lease-purchase an airplane. That provision reads:
 There is hereby appropriated to the Department of Public Safety from any monies not otherwise appropriated from the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 1995, the sum of Six Hundred Two Thousand Dollars ($602,000.00) or so much thereof as may be necessary for the lease-purchase and operating costs of an airplane. Any airplane acquired from funds appropriated by this section shall not be disposed of without the prior approval of the Legislature by concurrent resolution.
1996 Okla. Sess. Laws ch. 9, § 111.
¶ 14 As can be seen from the language of this appropriation, the only restriction placed upon the appropriation is that any airplane acquired with the funds appropriated, cannot be disposed of without the prior approval of the Legislature. No restriction on the plane's use was provided. In the past, however, the Legislature, in authorizing the Department of Public Safety to purchase an airplane, has, at times, restricted its use to official State business.
¶ 15 In 1973 the Legislature, in appropriating funds to the Department of Public Safety to purchase an aircraft, limited the use of such aircraft to the conduct of official business of the State. That appropriation section provided:
 There is hereby appropriated to the Oklahoma Department of Public Safety, from any monies in the Federal Revenue Sharing Fund of the State Treasury, not otherwise appropriated, the sum of One Hundred Seventy-five Thousand Six Hundred Dollars ($175,600.00), or so much thereof as may be required for the purchase of a passenger aircraft, remainder of funds required to be from Department funds. (See Section 25 for prohibitions and restrictions on the use of Federal Revenue Sharing Funds.) Said airplane shall be used only in the conduct of the official business of this state.[2]
1973 Okla. Sess. Laws ch. 210, § 20 (emphasis added).
¶ 16 Thus, we see that in the past, when the Legislature authorized the Department of Public Safety to purchase an aircraft, it has at times expressly required that the aircraft could only be used for official State business, but in its most recent authorization to acquire an aircraft, the Legislature did not place such a limitation on the aircraft's use. The absence of a use restriction in the most current authorization, together with the absence of such a restriction in 47 O.S. 1991, §2-101[47-2-101], suggests a legislative intent not to restrict theplane's use to official duty. The likelihood of such a legislative intent is strengthened by the fact that the Legislature has — in providing for travel reimbursement — expressly provided for such restrictions.
 The Statutory Restrictions on the Governor's Ability to be Reimbursed for Travel Expenses
¶ 17 Under the provisions of 74 O.S. Supp. 1996, § 500.18[74-500.18](A), members of the Legislature, the Governor and the Lieutenant Governor are exempt from the general provisions of the State Travel Reimbursement Act, 74 O.S. 1991 and Supp. 1996, §§ 500.1
through 500.55. Travel reimbursement for the Governor, Lieutenant Governor and their spouses, is specifically provided for at 74O.S. 1991, § 500.20[74-500.20]; under that provision, reimbursement islimited to actual and necessary travel expenses incurredwhile on official business of the State:
 The Governor of the State of Oklahoma is hereby authorized reimbursement for all actual and necessary travel expenses incurred when on official business of the state. Such actual and necessary expenses shall include the subsistence and transportation expenses of the Governor's spouse when accompanying the Governor on official business of the state, or when attending an official function at the request of the Governor. The provisions of this section shall also apply to the Lieutenant Governor and the Lieutenant Governor's spouse.
74 O.S. 1991, § 500.20[74-500.20] (emphasis added).
¶ 18 Additionally, at 74 O.S. 1991, § 2009.1[74-2009.1], the Legislature has authorized reimbursement for actual and necessary travel expenses incurred by the Governor, Lieutenant Governor and theirstaffs, and employees of other State agencies designated by theGovernor, for expenses incurred in implementing duties relatingto international development. That section limits such reimbursement to expenses incurred in implementation duties related to international developments:
 The Governor, Lieutenant Governor and their staffs shall be reimbursed for actual and necessary travel expenses when incurred in implementing duties relating to international development.
Employees of other state agencies designated by the Governor shall be reimbursed for actual and necessary travel expenses as authorized by the Governor, when incurred in implementing duties relating to international development.
74 O.S. 1991, § 2009.1[74-2009.1] (emphasis added).
¶ 19 Under the State's current statutory scheme, the Governor's ability to be reimbursed for travel expenses is thus limited to expenses incurred while on official business of the State, whether the travel is related to the general business of the State or to duties related to international development. No such statutory restrictions, however, exist with respect to the duty of the Commissioner of Public Safety to provide transportation to the Governor. Because the provisions of 47 O.S. 1991, § 2-102[47-2-102],
in addition to requiring the Commissioner of Public Safety to provide transportation, security and protection, and communication capabilities to the Governor, also imposes a duty on the Commissioner to provide such to the Governor's immediate family members — who have no official duties to perform — it is difficult to read into that statute an implied restriction that such services shall only be provided when the Governor and his family are on official business of the State.
¶ 20 Nor, as discussed above, is such an implied construction mandated by the public purpose requirement of Article 10, § 14 of the Oklahoma Constitution, as it cannot be said, as a matter of law, that providing full time protection, transportation and communication capabilities to the State's First Family does not constitute a public purpose. Accordingly, we conclude that if it is the Legislature's desire to restrict the conditions under which the Commissioner of Public Safety is required to provide for the personal security and protection, transportation and communication capabilities of the Governor and his immediate family, that intention must be expressed in the applicable statutes.
¶ 21 In reaching this conclusion, we are mindful that the responsibility of the Commissioner of Public Safety for the Governor's transportation is to transport the Governor from place to place — from place A to place B. There is no grant of authority to use the State's vehicles or airplane to aid the non-State (public purpose) interest of others. Thus, the Governor's State car cannot be used, consistent with constitutional limitations, to transport supporters other than the Governor and his immediate family or Lieutenant Governor to a political rally, private business meetings or like activities, unless such travel constitutes official business. Nor, can the State vehicle or airplane be used as instruments of private business or political support. The State airplane or vehicle may not be used to display campaign bumper stickers, campaign signs, corporate logos, advertisements, or to transport other than the Governor and his immediate family or the Lieutenant Governor, to political, private business or other non-State-business functions.
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. In interpreting the requirement of Article 10, § 14 of the Oklahoma Constitution that taxes be levied and collected for public purposes only, the term "public purposes" is not to be given a narrow or restrictive interpretation, and courts will not interfere to arrest legislative action where the line of distinction between what is allowable and that which is not, is faint and shadowy. In such instances, the Courts have accepted the decision of the Legislature as final.
 2. While past legislative enactments authorizing the Department of Public Safety to purchase or lease an aircraft have required that any aircraft purchased be used only for the conduct of official business of the State, the most recent authorization, at 1996 Okla. Sess. Laws ch. 9, § 20, contains no such restriction.
 3. Under the provisions of 47 O.S. 1991, § 2-101[47-2-101], the Commissioner of Public Safety is required to provide for the personal security and protection, transportation, and communication capabilities of the Governor, Lieutenant Governor, and the Governor's immediate family. In imposing this mandatory duty upon the Commissioner of Public Safety, the Legislature has not expressed an intention to limit those duties to instances when the Governor is conducting official business of the State. Nor can such a restriction be implied in light of (1) the fact the Governor's immediate family — who has no official duties to perform — are provided with transportation, communication capabilities and protection; and (2) the Legislature has expressly imposed such limitations in the similar circumstances, when it restricted the Governor's ability to be reimbursed for travel expenses to expenses incurred when on official business of the State in 74 O.S. 1991, § 500.20[74-500.20], and 74 O.S. 1991, § 2009.1[74-2009.1].
 4. Nor is an implied use restriction required by the public purpose provisions of Article 10, § 14 of the Oklahoma Constitution, as it cannot be said, as a matter of law, that providing the State's First Family with full-time personal security and protection, transportation, and communication capabilities is not a proper public purpose.
 5. The responsibility of the Commissioner of Public Safety, under 47 O.S. 1991, § 2-101[47-2-101], to provide the Governor and his immediate family with transportation, is to transport the Governor and his immediate family from place to place. In meeting this responsibility, neither the State-owned airplane nor vehicles may be used for other non-State purposes, such as for transporting persons other than the Governor and his immediate family for non-State-business purposes, such as to a political rally, private business meetings, and the like. Nor, may the State airplane or vehicles be used to display campaign bumper stickers, signs, corporate logos, or for other non-State-business purposes.
 W.A. DREW EDMONDSON ATTORNEY GENERAL
 NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] In responding to your inquiry, we examine both the Oklahoma Constitution and statutes, but have not reviewed rules of the Ethics Commission, such as Rule 257:10-1-3, which prohibits, among other things, the use of "public funds, property, or time, to participate or assist in the organization of or preparation for a fundraiser for a campaign . . . for or against a candidate for state office." In this case we leave such inquiries to the Ethics Commission, which has primary jurisdiction over the interpretation of its rules.
[2] In Attorney General's Opinion 76-201, the Attorney General, emphasizing the above emphasized language, opined that the acquired aircraft's use need not be specifically related to the statutory duties and responsibilities of the Department of Public Safety, as long as the aircraft was used for public and not private purposes. The question presented today in whether providing the State's First Family with full-time transportation is a public purpose.