WICKHAM v. GRAND RIVER DAM AUTHORITY.

No. 30514.    Oct. 21, 1941.

*118 P. 2d 640.*

Ernest R. Brown, of Pryor, for plaintiff in error.

R. L. Davidson, of Tulsa, and Q. B. Boydston and Jesse L. Ballard, both of Vinita, for defendant in error.

OSBORN, J. This action was instituted in the district court of Craig county by J. C. Wickham, hereinafter referred to as plaintiff, against Grand River Dam Authority, a public corporation, hereinafter referred to as defendant, wherein it was sought to enjoin the issuance, sale and delivery of Grand River Dam Authority 4 per cent revenue bonds in the aggregate amount of $1,300,000, on the sole ground that the amended provisions of section 23, art. 10, of the Constitution of the State of Oklahoma, effective March 11, 1941, operated to cancel and annul the power and authority of defendant to issue and sell said bonds. Issues were joined and the cause was presented to the trial court upon a stipulation of facts. From a judgment in favor of defendant, plaintiff has appealed.

Plaintiff is a resident and taxpayer of Mayes county, and brings this action for himself and others similarly situated.

The Grand River Dam Authority is a public corporation created by legislative authority. See article 4, ch. 70, Session Laws 1935. The Authority was granted power to control, store, and preserve the waters of Grand river and its tributaries for the purpose of irrigation, development of water power, electric energy and other purposes. It was expressly authorized to borrow money and to issue bonds "not to exceed fifteen million dollars."

Immediately following the adoption of article 4, ch. 70, supra, an application was filed with the Federal Emergency Administration of Public Works for a loan and grant to finance the construction of the project, which included the construction of the dam, a hydroelectric generating plant and power plant building, transmission lines, the acquisition of land and right of way, and other incidental costs of construction. The estimated cost of the project at that time was $20,000,000, which was based upon preliminary surveys. On October 16, 1937, the United States of America offered to purchase bonds of the defendant in the amount of $11,563,000, and to make a grant of 45 per cent of the cost of the project, not to exceed the sum of $8,437,000, which offer was duly accepted by defendant. Thereafter, defendant authorized the issuance of bonds in the amount of $12,500.000.

It was subsequently ascertained that the sum of $20,000,000 would not be sufficient to pay the cost of construction of the project, and on July 26, 1940, the United States of America agreed to purchase bonds in the principal amount of $12,700,000 and to make a grant not to exceed $10,500,000, which offer was accepted by defendant on August 13, 1940. The defendant, by resolution adopted on May 14, 1940, had declared its willingness to issue and sell at any time to the United States all or any part of its revenue bonds in the amount of $15,000,000, which it was expressly authorized to issue and sell to finance the cost of constructing the project, if the additional funds were insufficient. It is agreed that the United States, relying upon the willingness and ability of defendant to issue its bonds up to $15,000,000, entered into the amendatory loan and grant agreement of July 26, 1940, and made available the additional funds provided therein.

A transcript of the bond proceedings authorizing the increase to the aggregate amount of $15,000,000 was submitted to the Attorney General of the State of Oklahoma prior to March 11, 1941.

Temporary bonds representing the increase of $2,500,000 were executed by defendant and presented to the Attorney General for examination; the Attorney General approved the issue of bonds in the principal amount of $15,000,000, including the original issue of $12,500,000 and the increase of $2,500.000, and endorsed on the temporary bonds his certificate as required by law. The certificate of the Attorney General was filed with the State Auditor and the temporary bonds representing the increase of $2,500,000 were registered with the State Auditor and endorsed by him as required by law.

At the time of the amendatory loan and grant resulting from the offer of July 28, 1940, and the acceptance thereof on August 13, 1940, it was believed that the increase in the loan and grant thereby provided would be sufficient to complete the project, but it was determined that additional funds were necessary to complete the project. Accordingly, the defendant, on April 15, 1941, requested the United States to purchase other bonds of said issue of $15,000,000 aggregating $1,300,000, and to make an additional grant of $1,063,636, and declared its willingness to issue and sell at any time to the United States all or any part of the remainder of the authorized issue of $15,000,000. On August 2, 1941, the United States made an offer to the defendant to purchase additional bonds of defendant in the principal amount of $1,300,000 and to make an additional grant to defendant of $1,063,636. The offer was accepted by resolution of the board of directors on August 7, 1941.

It is the proposed sale of the bonds to the amount of $1,300,000 referred to in the latter amendatory agreement which the plaintiff herein seeks to enjoin.

It is noted that the parties did not enter into a new contract on the date of August 2, 1941, but merely amended the original contract of October 16, 1937, by substitution of figures. It is unnecessary to set out in full the amendatory agreement of July 6, 1940, but it is sufficient to say that said agreement did not constitute a new contract, but likewise provided for amendment of the original contract by substitution of figures. It was stipulated in the trial court that defendant, in its proceedings authorizing the issuance of the bonds, covenanted to complete the project and to establish, charge, and collect rents, tolls, rates and fees for the use of the facilities furnished or supplied by the Authority sufficient to provide for the operation and maintenance of the project; to provide a sinking fund for the payment of the interest and the principal of the bonds sold and delivered by defendant; to provide a reserve fund for any deficiency occurring as a result of insufficient collection of revenue; and to meet all other obligations of the Authority. It was further stipulated that the funds made available under the original and first amendatory loan and grant agreement are not sufficient to complete the project, and that the additional funds provided for under the second amendatory loan and grant agreement are necessary to complete the project as originally contemplated and to enable defendant to produce sufficient revenues from the project to fulfill its contract with the United States of America.

It is noted that under the provisions of section 10, ch. 70, Session Laws 1935, the Authority was expressly authorized to issue bonds not to exceed the amount of $15,000,000. The sum total amount of bonds heretofore issued and sold, plus the bonds involved herein, is $14,000,000.

On March 11, 1941, at an election duly called, the voters of the State of Oklahoma approved and adopted an amendment to section 23, art. 10, of the Constitution, relating to the incurring of indebtedness on the part of the state, its institutions, departments and agencies. That portion of the amendment which is pertinent to the issue presented here is as follows:

"Any department, institution or agency of the state operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency shall not incur obligations in excess of

the unencumbered balance of surplus cash on hand. . . .

"The state shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in sections twenty-four (24) and twenty-five (25) of article ten (X) of the Constitution of the State of Oklahoma. Provided that the Legislature may fund or refund the state debt arising prior to July 1, 1941."

Plaintiff contends that since we have heretofore held in the case of Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355, that the Grand River Dam Authority is an agency of the state, the above-quoted provisions are applicable and expressly prohibit said Authority from incurring indebtedness.

Defendant contends that the amendment was adopted for the sole purpose of balancing the state budget and deals with revenues exacted under the power of taxation or through the exercise of other governmental powers, and was not intended to have application to self-liquidating projects. It is further contended that the amendment is prospective and not retrospective in operation, and was not calculated to destroy the right previously granted by the Legislature to issue revenue bonds payable solely from revenue to be derived from the project involved herein. We do not find it necessary in the instant case to pass upon either of these contentions, since we have elected to pass upon another proposition presented by defendant, which is "that the withdrawal of the authority previously granted to issue and sell the full amount of $15,-000,000 of bonds for the purpose of constructing and completing the project would impair the obligation of the contract between the Authority and the United States of America, contrary to section 10, art. 1, of the Federal Constitution," which provides that "No state shall . . . pass any . . . law impairing the obligations of contracts." It must be borne in mind that prior to August 2, 1941, the United States was the owner of bonds to the amount of $12,700,000.

In an unbroken line of decisions we have held that the law in force at the time of issuance of municipal bonds enters into the terms thereof, and the obligations of said contracts cannot thereafter be in any way impaired or the fulfillment thereof hampered or obstructed by a change in the law. See Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605; Nelson v. Pitts, 126 Okla. 191, 259 P. 533, 53 A.L.R. 1137; Runnells v. Oklahoma City, 150 Okla. 292, 1 P. 2d 740; Straughn v. Berry, 179 Okla. 364, 65 P. 2d 1203; Bonebrake Hdw. Co. v. Miller, 181 Okla. 4, 72 P. 2d 351; Davis v. McCasland, 182 Okla. 49, 75 P. 2d 1118. See, also, Moore v. Otis, 275 F. 747.

The above-cited authorities deal with changes in the law by legislative enactments and not by amendments to the Constitution, but there is no dearth of authorities in support of the proposition that an amendment to a State Consitution is a "law" within the meaning of the Federal Constitution prohibiting the passage of laws impairing the obligations of contracts.

In the case of New Orleans Gas-Light Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U. S. 650, 6 S. Ct. 252, 29 L. Ed. 516, it was said:

"A state can no more impair the obligation of a contract by her organic laws than by legislative enactment; for her Constitution is a law within the meaning of the contract clause of the National Constitution. Railroad Co. v. McClure, 10 Wall. 511, (77 U. S. 511, 19 L. Ed. 997); Ohio Life Ins. & T. Co. v. Debolt, 16 How, 429, (57 U. S. 416, 14 L. Ed. 1002); Sedgwick's Stat. & Const. Law, 637. And the obligation of her contracts is as fully protected by that instrument against impairment by legislation as are contracts between individuals exclusively. New Jersey v. Wilson, 7 Cranch, 164 (11 U. S. 164, 3 L. Ed. 302); Providence Bank v. Billings, 4 Pet. 514, (29 U. S. 514, 7 L. Ed. 939); Green v. Biddle, 8 Wheat. 1 (21 U. S. 1, 5 L. Ed. 547); Woodruff v. Trapnall, 10 How. 190 (51 U. S. 190, 13 L. Ed. 382); Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395."

See, also, Gunn v. Barry, 82 U. S. 610, 21 L. Ed. 212; McBride v. Retirement Board of Allegheny County, 330 Pa. 402, 199 Atl. 130; Haberlach v. Tillamook County Bank, 134 Ore. 279, 293 P. 927, 72 A.L.R. 1275; Dagg v. Hammons, 34 Ariz. 445, 272 P. 643, 72 A.L.R. 1237; Folks v. Marion County, 121 Fla. 17, 163 So. 298, 102 A.L.R. 659; annotation, 109 A.L.R. 817; 16 C.J.S., Const. Law, § 276, p. 696, and authorities therein cited; 11 Am. Jur., Const. Law, § 41, p. 648, and authorities therein cited.

The sole question remaining is whether or not the obligation of the contracts would be impaired by a nullification of the authority previously granted to issue and sell bonds within the maximum amount fixed by the legislative act. We have heretofore pointed out that all of the bonds and the interest thereon were to be paid from funds derived from rents, tolls, rates, and fees to be charged for the use of the facilities of the *completed project;* that the project could not be completed without the additional funds to be derived from the sale of bonds and the grant provided by the amendatory agreement of August 2, 1941. The failure to complete the project would eliminate the source from which revenue was to be derived to pay the bonds already owned by the United States. It is conceded that the Authority possessed no other means of providing for payment of its obligations; that it was without power to assess and collect taxes or to pledge the credit of the state. It must have been contemplated when the original agreement of October 16, 1937, was made that the cost of labor and materials would fluctuate, and that in the event of rising costs there was legislative authority to provide for such increase by the issuance of bonds to the maximum amount of $15,000,000, thus insuring a completed project in the event of increases in construction costs pending the completion of the project. It thus seems clear that to nullify the authority previously granted by the Legislature to issue and sell sufficient bonds to complete the project so that it would earn the revenue for the discharge of the obligations of the Authority, would very seriously impair the obligations of the existent contracts of the Authority.

We therefore hold that section 23, art. 10, of the Constitution, as amended, is ineffective to deprive defendant of the power and authority to issue and sell the bonds according to the terms and conditions proposed in the amendatory agreement hereinabove referred to.

Having taken this view of the matter, it is unnecessary to consider the various other constitutional questions argued in the briefs.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. DAVISON, J., absent.