THE FORTINBERRY CO. et al. v. BLUNDELL et al.

No. 34503. Feb. 26, 1952.

Rehearing Denied April 1, 1952.

242 P. 2d 427.

Richardson, Shartel & Cochran, Oklahoma City, for plaintiffs.

R. F. Barry, General Counsel of the Oklahoma Tax Commission, R. E. Thompson, Asst. Counsel of the Oklahoma Tax Commission, and Mac Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for defendants.

HALLEY, V. C. J. This is an original action in this court by The Fortinberry Company, Inc., a Delaware corporation, and The First National Bank & Trust Company of Oklahoma City, against Roger Phelps, State Budget Director, A. S. J. Shaw, State Auditor, John D. Conner, State Treasurer, and the Oklahoma Tax Commission, wherein plaintiffs seek an alternative writ of mandamus requiring defendants to approve plaintiffs' claim, to issue and deliver to plaintiff Bank a warrant thereon, drawn upon the fund in the hands of the State Treasurer, which was collected by the Commission in administering the State's automobile license laws and appropriated by the 1937 Act of the Legislature for the payment of such claims and deposited with the Treasurer, and requiring the Treasurer to pay said warrant out of said fund, designated by the 1937 Act as the "General Enforcement Fund", or to file herein their reasons for not doing so.

This action was revived in the names of Don C. Blundell, as Budget Director, Wilburn Cartwright, as State Auditor, and A. S. J. Shaw, as State Treasurer, as substitute defendants. All defendants will be referred to by their official titles.

Plaintiffs also pray that should there not be in the hands of the Treasurer funds available for the payment of the warrant sought to be issued, the Treasurer be required to register said warrant and endorse thereon: "Not paid for want of funds", and to number,

date, and sign the same in accordance with §552, Title 62, O. S. 1951.

Plaintiffs pray that upon final hearing, the alternative writ or writs be made preemptorily and that should the writ first prayed for be denied, a further writ issue to the Budget Director, State Auditor, and State Treasurer, requiring the Treasurer to pay into the General Enforcement Fund in the State Treasury ten per cent of all moneys collected in the administration of Oklahoma's motor vehicle license laws, up to $50,625; requiring the Budget Director to approve plaintiffs' claim; requiring the Auditor to issue and deliver to plaintiff Bank a warrant in said sum upon the General Enforcement Fund; and requiring the Treasurer to pay said warrant from that Fund.

The basic facts upon which this action arose are as follows:

The Fortinberry Company, Inc., a Delaware corporation, was the owner of patents covering specially designed nuts and bolts used in securely fastening license tags or plates to motor vehicles. On May 18, 1937, it entered into a written contract with the State, acting by and through the Oklahoma Tax Commission, whereby the State agreed to buy 675,000 pairs of such nuts and bolts for use in 1939 and 1940, for a total consideration of $50,625. The Fortinberry Company never qualified to do business in Oklahoma nor appointed an agent upon whom service of process could be made; it had no office or place of business in Oklahoma, and none of its officers ever resided here, and it did no business in Oklahoma, except making the above contract, and on June 4, 1937, it borrowed $44,000 from the plaintiff Bank, due February 10, 1938, and bearing 6½% interest. This note was renewed and extended last on March 18, 1938, to be due April 28, 1938. No payment was ever made on the principal and no interest paid after February 10, 1938, leaving an amount due thereon far in excess of plaintiffs' claim.

The claim here involved was pledged to plaintiff Bank to secure the payment to the Bank for the same purpose. The assignment to the Bank was approved by the Oklahoma Tax Commission by the following instrument:

"Acceptance.

"The State of Oklahoma acting by and through the Oklahoma Tax Commission as party of the first part, under a contract dated May 18, 1937, with The Fortinberry Company, Inc., of St. Louis, Missouri, as party of the second part, hereby accepts the assignment of said contract, and the money due thereunder, by The Fortinberry Company, Inc., to The First National Bank and Trust Company of Oklahoma City, Oklahoma, and agrees that the money to become due and paid to The Fortinberry Company, Inc., will be paid to The First National Bank and Trust Company of Oklahoma City in lieu of payment thereof to the said The Fortinberry Company, Inc.

"Dated this 4th day of June, 1937.

"Oklahoma Tax Commission
"by (signed) H. L. McCraken,
"Commissioner.

"(Seal)

"Attest: (signed)

"J. J. Rogers."

The charter of the Fortinberry Company, Inc., was repealed by the Governor of Delaware on January 18, 1945, for failure to pay its franchise tax for two years, and since that time it has transacted no business, and no receiver, trustee, or liquidating agent has been appointed for it.

In 1937, the Oklahoma Legislature passed an Act (S. L. 1937, P. 348) relative to licensing motor vehicles. Section 35 thereof made it the duty of the Tax Commission to administer the Act and make rules and regulations to carry out those provisions. Section 5 provided that upon payment of fees to the Commission, it should assign to each district numbered license tags or plates, in form and size provided by the Commission, and that such plates

should be securely fastened to the front and rear of each motor vehicle so licensed to operate upon the highways.

Subd. (c) of §3 of the 1937 Act created a special fund, called the "General Enforcement Fund", consisting of ten per cent of all moneys received and collected by the Commission under the Act, including license fees. These moneys were to be paid by the Commission each month to the State Treasurer and credited to the General Enforcement Fund, and it was further provided that "said fund, or so much thereof as may be necessary, is hereby applied and shall be used by the Oklahoma Tax Commission in paying the cost and expense necessarily incurred by said Commission in administering and enforcing this Act."

The last provision expressly included the cost of license plates, which the Commission was required to furnish the owners of motor vehicles upon payment of the required fee therefor.

The Fortinberry Lock-Strip License Plate was so designed that when once attached to a motor vehicle it could not be removed without destroying or mutilating the plate or tag. The above contract gave the Commission the right to manufacture and use the plate for 1939, and the Commission agreed to purchase from The Fortinberry Company one of the essential parts of the plate, being two specially designed nuts and bolts for each plate. These nuts and bolts were to be delivered to the Warden of the State Penitentiary at McAlester, Oklahoma, on or before January 10, 1938, and payment therefor made within thirty days of delivery.

The Fortinberry Company caused the nuts and bolts to be manufactured, and tendered delivery within the required time and as provided by the contract. On December 28, 1937, the Commission refused to accept the shipment for the state, but received it for storage for the shipper. On February 8, 1938, the Tax Commission was furnished a copy of the invoice and claim for approval.

On February 28, 1938, The Fortinberry Company filed in the district court of Oklahoma county an action for an alternative writ of mandamus, seeking to have its claim adjudged lawful and valid and a warrant therefor issued and registered for payment. On June 22, 1940, the plaintiff Bank obtained permission to and did intervene in that action. Upon trial in 1946, the district court rendered a judgment for the plaintiffs, finding that the contract between the Tax Commission and The Fortinberry Company was a legal and valid contract and that the assignment and pledge thereof to the Bank was valid, and that such acts had been accepted and approved by the Commission. That judgment was appealed to this court, and will be referred to as Case No. 33059, which was reported in 201 Okla. 537, 207 P. 2d 301. On April 19, 1949, this court affirmed the judgment of the district court, and rehearing was denied on June 21, 1949. The mandate was duly filed in the district court and an alternative writ of mandamus issued, requiring the Tax Commission to allow and approve plaintiffs' claim, and further requiring that such claim be allowed by the Auditor, warrant issued, and payment made.

The Auditor sought an opinion from the Attorney General, and was advised that the claim was not valid and that he should make no effort to pay the same unless ordered to do so by this court. The principal reason upon which the opinion of the Attorney General was based was that the 21st Legislature enacted the "Oklahoma Budget Law of 1947", approved February 25, 1947, providing for the appointment of a Budget Director, who was authorized to audit and approve all claims payable by the state, and the Budget Director refused to allow and approve the claim in question after the Attorney General had advised him that he should not do so. The Attorney General further stated (1) that subd. 3 (c) of sec. 3 of the 1937 Act, above referred to, provided that unexpended balances in the General Enforcement Fund on December

31st of each year should revert to and become a part of the General Revenue Fund of the State; (2) that the Act of 1937 was repealed by sec. 38 of the Act of 1939 (S. L. 1939, pp 279-306; and (3) that the Act of 1939 was repealed in 1941, and that the only appropriation to pay obligations incurred by the Tax Commission was a sum appropriated for the fiscal years ending June 30, 1950, and June 30, 1951, by S. B. 26, S. L. 1949, p. 711, and that sec. 6 of that bill provided that no moneys therein appropriated should be used to pay any obligations of the Tax Commission contracted prior to the fiscal years therein named, or to pay any judgment or claim growing out of any contract originating or incurred prior to said fiscal years.

The present action was commenced by The Fortinberry Company and the Bank on January 9, 1950. It has for its ultimate objective the payment of its claim arising under its contract of May 18, 1937, now held by the Bank as pledgee and asignee with the approval of the Commission. This action is clearly ancillary to the original action filed in 1938 in the district court and appealed to this court as Case No. 33059. The district court held the contract and claim valid and entered a decree directing its approval and payment. That judgment was appealed from to this court, where the contract, claim, and assignment thereof were held lawful and valid and the judgment of the district court affirmed.

The defendants claim that The Fortinberry Company has no power to join as plaintiff in this action because it is admitted that its charter was forfeited or repealed in 1945 for failure to pay franchise taxes to the State of Delaware. This question is subject to the laws of Delaware, the applicable portions of which are submitted by stipulation for our consideration. It is a general rule that the expiration or forfeiture of the charter of a corporation does not forfeit its property rights or affect obligations due it or owing by it to others. Section 42 of the Corporation Laws of Delaware provides that upon dissolution of corporations by time, or otherwise, they shall be continued for a term of three years "for the purpose of prosecuting and defending suits by or against them", and that with respect to any action "begun or commenced by the corporation within three years after the date of such expiration or dissolution. . . such corporation shall only for the purpose of such actions . . . b e continued bodies corporate beyond said three year period until any judgments, orders or decrees therein shall be fully executed."

It is further provided that after a corporate charter is forfeited or repealed, the corporation "may at any time" procure a revival thereof and be restored to all rights and subject to all duties imposed by its original charter. After its charter is repealed it is not authorized to carry on the business for which it was formed, but it has been generally held that the repeal of a charter for failure to pay a franchise tax does not render the corporate entity entirely dead, but only suspends its powers until revived by compliance with the law. In Wax v. Riverview Cemetery Co., 41 Del. 424, 24 A. 2d 431, the Supreme Court of Delaware held that the forfeiture of a corporation's charter for failure to pay its franchise tax for a period of two years is "purely a revenue measure"; that that charter does not become void by the Governor's proclamation, "for there has always been provision for reinstatement. . .which could not occur if the charter had become absolutely void." The court further said:

"The great weight of modern decisions construing tax acts similar to our own, hold that so long as there is a statutory right to be reinstated the proclamation of forfeiture for nonpayment of taxes does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity" (Citing numerous decisions from other states).

In that case a corporate charter had been forfeited for eight years and the corporation was sued in its corporate name, and the court held that it was still capable of being sued as a corporation. See, also, Watts v. Liberty Royalties Co., 106 F. 2d 941.

The district court action above mentioned was commenced in 1938, several years before the charter was repealed, and this action is in fact only a continuation of and ancillary to that action. It is based upon the same grounds and seeks the identical relief, by the same remedy, an alternative writ of mandamus to require state officials to approve and pay its claim, which this court has already held to be valid and based upon a legal contract. We conclude that The Fortinberry Company has a right to prosecute this action. It is equally clear that the Bank, as pledgee and assignee of the claim, with the agreement of the Commission to pay to the Bank any moneys due under the contract, could maintain the action in its own name without regard to the power of its coplaintiff.

Defendants urge that the Act of 1937, creating a fund which the Tax Commission was authorized to expend in enforcing and administering the Act, consisting of ten per cent of the moneys collected by the Commission in the sale of licenses for the operation of motor vehicles, was definitely repealed by sec. 38 of the Act of 1939. Plaintiffs rely upon the fund appropriated by the Act of 1937, and the means provided by that Act for raising such fund, which was appropriated and directed to be used in payment of plaintiffs' claim.

Plaintiffs claim that the 1937 Act was continuous in form, and that its provisions became a part of their contract, which was entered into under the 1937 law, and that the 1939 Act could not repeal the provisions of the 1937 Act for the payment of plaintiffs' claim without making other adequate provisions for payment. The "General Enforcement Fund" was created in 1937, and that Act provided that ten per cent of all moneys collected in administering the Act should be deposited in such fund and used in enforcing and administering the provisions of the Act. It is stipulated that each month from July 1, 1939, to January 1, 1940, there was a surplus in the General Enforcement Fund in excess of the amount of plaintiffs' claim, after paying all other expenses of administration. Was the transfer of the money from the General Enforcement Fund to the General Revenue Fund, after it had been appropriated to pay plaintiffs' claim, a violation of the contract clauses of the State and Federal Constitutions? Was the attempt to repeal the 1937 Act by the 1939 Act, by abolishing the General Enforcement Fund and transferring the moneys in such fund to the General Revenue Fund, effective to destroy plaintiffs' right to have their claim paid from the fund provided for its payment by the 1937 Act?

Sec. 10, art. I of the United States Constitution provides that no state shall pass any law impairing the obligation of contracts. Sec 15, art. II of the Oklahoma Constitution provides that "no law impairing the obligation of contracts shall ever be passed."

It has been held in many cases that these inhibitions are applicable to contracts of the state as fully as to those between individuals. (Fletcher v. Peck, 6 Cranch 87, 136; Poindexter v. Greenhow, 114 U. S. 270; Wood v. Lovett, 313 U. S. 362.)

The above clauses also prohibit impairment of a contract by amendment of the State Constitution or the adoption of a new one. (Louisiana v. Pillsbury, 15 Otto 278; Wickham v. Grand River Dam Authority, 189 Okla. 540, 118 P. 2d 640.)

The 1937 Act was in effect when the contract involved was entered into between the parties. It provided the means of its performance, and that law became a part of plaintiffs' contract, and could be repealed or amended as to future contracts, but would not affect contracts existing when

it was amended or repealed without making adequate provision to meet the existing obligation of plaintiffs' contract. (W. B. Worthen v. Kavanaugh, 295 U. S. 56; Coombes v. Getz, 285 U. S. 434; Nelson v. Pitts, 126 Okla. 191, 259 P. 533; Davis v. McCasland, 182 Okla. 49, 76 P. 2d 113.)

In the last case cited, this court said:

"The remedy subsisting in the state when and where a contract is made and to be performed is part of the obligation of the contract which cannot be impaired by subsequent legislation."

Sec. 54, art. V of the Oklahoma Constitution provides that "the repeal of a statute shall not . . . affect any accrued right . . . incurred . . . by virtue of such repealed statute." The question naturally arises: Was plaintiffs' right an "accrued right"? It had been authorized by law; this court had held the contract to be lawful and valid. It had been performed by the plaintiffs. A claim for the amount due under the contract had been duly filed, and the claim was due. If the claim had been approved when presented, this action would not have been necessary. The plaintiff had performed its contract fully prior to January 10, 1938, the time provided therein. When the contract was fully performed by The Fortinberry Company, it had a right to have it satisfied by the deposits in the then-existing General Enforcement Fund. Ten per cent of the license fees collected by the Tax Commission was being deposited in the General Enforcement Fund. Upon refusal of the state officials to approve and pay the claim, plaintiffs' only remedy was to seek to compel performance by mandamus.

We conclude that the accrued right of plaintiffs could not be defeated by an attempt to repeal the law under which the claim arose, and which law made ample provision for its payment. In Barry v. Board of County Commissioners, 173 Okla. 645, 49 P. 2d 548, this court said:

"It is clear that this right existed from the time of its accrual to the effective date of the repealing act. This being true, it is our opinion that the right could not be affected or extinguished by the act of the Legislature after its accrual. The repeal of the statute providing the remedy would in effect destroy the right, unless an adequate remedy remains or a new and adequate remedy is provided. . . .

"We therefore conclude that the repeal of sec 12642, supra, by the act of the 1933 Legislature must, in view of the Constitution, be held to have no effect upon plaintiffs' remedy."

In Louisiana v. Pillsbury, supra, we find the statement that an unconstitutional law "must be disregarded—treated as if it never existed." In that case the court further said:

"The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and in legal contemplation it is as inoperative as if it had never been passed. It imposes no duties, confers no rights, bestows no power or authority on anyone, affords no protection, and justifies no acts performed under it."

Defendants urge that plaintiffs are precluded from recovery by sec. 55, art. V, Oklahoma Constitution, which provides that no money shall be paid out of the Treasury "except in pursuance of an appropriation by law, nor unless such payments be made within 2½ years after the passage of such appropriation Act." We do not believe that this provision is applicable to the claim of plaintiffs. The delay here was caused by the refusal of state officials to approve and pay a valid claim. The delay is not chargeable to plaintiffs. In Carter v. Miley, 187 Okla. 530, 103 P. 2d 933, this court had under consideration a similar question. In 1937 (S. L. 1937 p. 367), the State Highway Commission was authorized to issue $35,000,000 of notes for the construction of roads and bridges. Sec. 15 of the Act appropriated $35,000 to pay special counsel to test the law in this court. Judge Miley was employed and ren-

dered the service. He filed a claim for compensation and it was approved and delivered to the Auditor, who refused to issue a warrant thereon. Judge Miley sought mandamus to compel the Auditor to issue a warrant. On June 25, 1940, over three years after the passage of the Act making the appropriation, this court granted the writ, and payment was made. This ruling was upon the theory that when a state official wrongfully refuses to perform an act necessary to secure payment, such payment will be enforced by mandamus and will relate back to and be considered as made when it should have been made, and the fund provided for payment shall be considered as encumbered by the claim. In State ex rel. Telle v. Carter, 170 Okla. 50, 39 P. 2d 134, it was said:

"It was clearly the intention of the framers of the Constitution that any party claiming any portion of an appropriation setting apart for some purpose or uses a definite sum of money, must make claim for same within two and one-half years after the appropriation is made, and if claim is not so made, thereafter the Legislature is authorized to make whatever disposition of the balance of such appropriation as it may determine is for the best interests of the state."

We agree with plaintiffs' view that the money appropriated by the 1937 Act was in the nature of a revolving fund, which would still be in effect unless the law were repealed or amended. It was not an appropriation for any fiscal year or years. When a just and lawful claim is properly presented for approval and payment out of a fund appropriated for the express purpose of paying such claim, the wrongful refusal of a state official to make payment does not affect plaintiffs' right to payment, and we think a sufficient amount of the fund appropriated is thereby earmarked and encumbered, and that the wrongful transfer of that fund to some other fund cannot affect the right of claimant to seek to compel payment by mandamus. As said in McEvers v. Boyle, Auditor,

25 Cal. Ap. 476, 144 P. 308, if some other fund "has been enriched by this special fund, it is to be presumed that this fund still exists, and is applicable to the payment of the warrants in question."

Under §§551 and 552, Title 62 O. S. 1951, which were in effect when the contract was made, it was made the duty of the Treasurer to pay any warrant drawn on any fund if there was sufficient cash on hand for payment, and if not, to endorse on the warrant "Not paid for want of funds." The warrant then drew interest; and under sec. 3 of art. X of the Constitution, it was the duty of the succeeding Legislature to provide for its payment; and, in the event that the state's indebtedness should be funded, such warrant would constitute a part of such indebtedness. (In re State Funding Bonds of 1935, Series A. 173 Okla. 622, 50 P. 2d 221.) We find nothing in the record to warrant the application of the doctrine of laches, or to apply the statutes of limitation. The claim involved was based upon a lawful and valid contract dated May 18, 1937, to be performed on or before January 10, 1938. On February 28, 1938, The Fortinberry Company filed its original application for a writ of mandamus in the district court of Oklahoma county. For reasons not disclosed, the judgment in that case was not entered until November 25, 1946. The defendants appealed to this court from that decree in favor of the plaintiffs, and judgment was affirmed April 19, 1949, and rehearing denied June 21, 1949. The Tax Commission, in compliance with that decree, approved plaintiff's claim, and it was then submitted to the Budget Director, who declined to approve the same for payment. He had sought the opinion of the Attorney General as to the lawfulness of the claim, and was advised that it would not be lawful to make payment unless ordered to do so by this court.

We are not concerned with the wisdom of practical aspects of the con-

tract entered into by the Tax Commission and The Fortinberry Company in 1937. However, it is interesting to note that nowhere in the record is there the slightest evidence that the contract was not entered into in good faith by both parties, nor is there any complaint that The Fortinberry Company did not live squarely up to the terms of the contract. Its part of the contract was performed according to its terms and within the time agreed upon.

There is no reason shown why the Tax Commission declined to accept and pay for the nuts and bolts according to its agreement. Only the state failed to perform its lawful and valid agreement. The validity of the contract and claim is res adjudicata. The citizens of Oklahoma are vitally interested in knowing that when its officials enter into a lawful and valid contract, its performance is as certain and enforceable as if the contract were between individuals—that the state will not seek a technical shield of future legislative action or take advantage of a maze of legal technicalities to avoid punctilious performance of its contractual obligations.

Here we have a lawful and valid contract as the basis of plaintiffs' claim. The General Enforcement Fund was created, and ten per cent of license fees collected by the Tax Commission was appropriated to supply that fund with sufficient moneys with which the Commission was authorized to pay administrative expenses.

It is immaterial that any subsequent legislative act undertook to repeal or amend the 1937 Act without making provision for the payment of accrued claims against the General Enforcement Fund, or ordered such funds to be transferred to another fund, or provided that future expenses of administration should be paid from an appropriation of a definite sum for each fiscal year, to be paid into the General Revenue Fund. The obligation of the state already had become fixed, and plaintiffs' rights protected by the in-

hibitions of both the State and the Federal Constitutions against impairing the obligations of contracts.

Nothing said in this opinion is intended to reflect in any wise upon any state official involved in this action.

It is ordered and decreed that a writ of mandamus issue commanding and requiring that the State Treasurer reinstate the "General Enforcement Fund", and that the Tax Commission deposit therein ten per cent of its collections from the administration of the automobile license law, up to the amount of plaintiffs' claim; requiring the Budget Director to approve said claim; requiring the State Auditor to issue a warrant thereon and deliver the same to the plaintiff Bank; and requiring the State Treasurer to pay said warrant out of the General Enforcement Fund upon the accumulation therein of a sufficient amount to cover said claim, and if there is no money in the Treasurer's hands for the payment of said warrant, that he register said warrant and endorse thereon: "Not paid for want of funds" and number, date, and sign the same as provided by §552, Title 62, O. S. 1951, in effect when the contract was entered into.

WELCH, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. CORN, J., dissents.