STATE of Oklahoma ex rel. jointly and severally, The BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. I (CHICKASHA), OF GRADY COUNTY et al., Plaintiffs in Error,

v.

The STATE BOARD OF EDUCATION of the State of Oklahoma et al., Defendants in Error.

No. 36619.

Supreme Court of Oklahoma.

Sept. 13, 1955.

Mastin Geschwind, Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., J. H. Johnson, Asst. Atty. Gen., for defendants in error.

JACKSON, Justice.

Plaintiff school districts appeal from the judgment of the trial court denying a peremptory writ of mandamus to compel the defendants, State Board of Education and its Director of Finance, to make a reapportionment and further disbursement of State Equalization Aid to the respective school districts for the fiscal year ending June 30, 1953.

There is no dispute as to the facts. For the fiscal year ending June 30, 1952, the plaintiff school districts received an apportionment of funds deriving from the Sheriff's sale of confiscated liquor under the provisions of 37 O.S.1951 § 101 et seq. The State Board of Education, in computing the Minimum Program Income of the respective school districts for the fiscal year ending June 30, 1953, included therein 90% of that amount so received in 1952 as an estimate of the amount to be received during the current year from the same source. This resulted in decreasing the amount of State Aid disbursed to the school districts by the exact amount so included.

Plaintiffs contend that the inclusion of this estimate in their Minimum Program Income was not authorized and they have been deprived of a proper allocation of State Equalization Aid. The record shows that no income from this source was estimated by the local Boards and none was actually received during the fiscal year ending June 30, 1953.

The question presented involves an interpretation of 70 O.S.1951 § 18–4, which provides that the amount of State Equalization Aid for which a school district may qualify

shall be determined by subtracting its Minimum Program Income from the cost of its Minimum Program. Subdivision 2, of the Statute, defines Minimum Program Income and, after mentioning the specific items of revenue which shall be included therein, provides in part as follows:

"i. And all other revenue * * * which can legally be estimated by the county excise board, * * *."

The State Board of Education and its Director of Finance take the position that it was their statutory duty to include an estimate of revenue to be derived from the sale of confiscated liquor for the year involved because income from that source was received during the immediately preceding year.

The school districts contend that, regardless of the fact that they received income from the sale of confiscated liquor in 1952, the probability that they would receive income from the same source in 1953 was so uncertain that it was not an item of income that could be legally estimated for 1953.

The school districts of this State share in the proceeds of the sale of confiscated liquor by virtue of 37 O.S.1951 § 101 et seq. That statute does not provide for periodic sales of such liquor. But it provides that:

"Where the Sheriff of the county has or comes into possession of intoxicating liquors ordered forfeited, he shall * * * within a reasonable length of time proceed to sell that portion found and ordered to be capable of sale by effecting a sale thereof at the best price obtainable in lawful commercial channels beyond the geographical limits of this State. * * *" § 104.

A study of these provisions with a knowledge and understanding of the problems attendant upon confiscation and sale of such liquor, calls attention to the uncertainty that sales of liquor will produce an annual revenue for the benefit of the schools of the respective counties, and the uncertainty involved in anticipating in advance that income will be derived from that source for any given year.

In Excise Board of Stephens County v. Chicago, R. I. & P. Ry. Co., 168 Okl. 523, 34 P.2d 268, this court said:

"In estimating the amount of income for a fiscal year from sources other than ad valorem taxes for the current year, municipal authorities are not authorized to anticipate revenue from a source from which there is no reasonable probability of receiving revenue."

This rule should also govern the State Board of Education in its calculation of "Minimum Program Income."

■ It was the intent and purpose of the Legislature in the enactment of State Equalization Statutes and making the appropriations therefor, to insure that each school district of the State would have a school program meeting certain minimum standards. Such a program was to be financed by local revenue supplemented, where necessary, by State Aid. The local school districts' portion in financing the program was to be that amount which would be produced as outlined by the Legislature and designated as "Minimum Program Income."

■ It was the duty and responsibility of the State Board of Education to make an estimate of the amount of income that probably would be received by the school districts under the "Minimum Program Income", and to include therein every item designated by that statute. But we do not construe the statutes as imposing upon the State Board the mandatory duty to include in such estimates an item of income from a certain source for any current year solely because income was received from that source for the preceding year. There must be a reasonable probability that such source will produce a revenue for the current year to justify its inclusion in an estimate upon which the school districts' financial program is to be based.

It is next urged by the defendants that there is now no existing appropriation legally available for payment of State Equalization Aid for the fiscal year ending June 30, 1953, even if the claims were otherwise valid.

The Twenty-third Legislature (1951) appropriated funds for payment of State Aid for the fiscal year ending June 30, 1953 by Senate Bill No. 13, page 294, O.S.L.1951, enacted May 29, 1951. It was provided therein that the appropriation was non-fiscal and available for contractual purposes for thirty months from that date.

The present action was begun and alternative writs issued on November 16, 1953, within the thirty-month period following the date of the 1951 appropriation.

Burton Logan, Comptroller for the State Budget Office, testified that on November 16, 1953, there remained on hand some $2,359,400 of the 1951 appropriation for the fiscal year ending June 30, 1953.

But the Twenty-fourth Legislature by House Bill No. 513, on June 15, 1953, enacted an appropriation bill for the fiscal years ending June 30, 1954 and June 30, 1955, page 458, O.S.L.1953, and in which it "continued and reappropriated" the items listed and originally appropriated by Senate Bill No. 13 of the Twenty-third Legislature "less the amount which has been expended in accordance with the provisions of said original appropriations on the date this Act becomes effective."

Art. V, § 55 of the Oklahoma Constitution provides that:

"No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, * * *."

These constitutional and statutory provisions give rise to the question raised by defendants as to whether there is now an appropriation legally available for the payment of plaintiffs' claims.

We do not construe House Bill No. 513 of the 1953 Legislature, supra, as intending to alter the appropriation made by Senate Bill No. 13 of the 1951 Legislature or the purposes for which it was made.

This court has established the rule that a statute should be given a construction which renders every word and sentence operative, rather than a construction that renders some words or sentences idle and nugatory. Simmons v. Benson, 206 Okl. 539, 244 P.2d 1126.

Applying this rule to House Bill No. 513 of the 1953 Legislature and giving effect to the word "continued", as used therein, it appears to have been the intent of the Legislature to continue the 1951 appropriation for a period of thirty months from the date of its enactment, May 29, 1951, for the purpose for which it was originally enacted and to reappropriate the balance, if any, after its purposes had been carried out.

This court has heretofore construed art. V, § 55 of the Oklahoma Constitution in cases involving a similar question. In Fortinberry Co. v. Blundell, 206 Okl. 261, 242 P.2d 427, 434, the plaintiffs' claim against the Oklahoma Tax Commission accrued in 1938, and should have been paid from an appropriation made by the Legislature in 1937. Plaintiffs' action in mandamus was before this court in 1952, many years after the 1937 Act creating the appropriation had been repealed by a subsequent Legislature. The court there said:

"Defendants urge that plaintiffs are precluded from recovery by sec. 55, art. V, Oklahoma Constitution, * * *. We do not believe that this provision is applicable to the claim of plaintiffs. The delay here was caused by the refusal of state officials to approve and pay a valid claim. The delay is not chargeable to plaintiffs."

The judgment in favor of defendants and for discharge of the Alternative Writ of Mandamus herein is reversed, with directions that judgment be entered for the plaintiffs in accord with the views herein expressed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY and BLACKBIRD, JJ., concur.