**STATE of Oklahoma, ex rel. Lewis LACY, et al., Appellees,**

v.

**Eddie JACKSON, et al., Trustees, and the Town of Forest Park, Oklahoma, a municipal corporation, Appellants.**

No. 54699.

Supreme Court of Oklahoma.

Dec. 20, 1983.

As Corrected Dec. 22, 1983.

Rehearing Denied July 3, 1984.

Morris Flynn, Oklahoma City, for appellees.

LeRoy Powers, Oklahoma City, for appellants.

Diane Pedicord, Oklahoma City, for amicus curiae, Oklahoma Municipal League.

BRIGHTMIRE, Special Justice.

The dispositive issue here involves a principle of importance and is whether a municipal corporation may pay the costs of printing and distributing a newspaper published by a private publishing company. The trial court held it may not. Temporary Court of Appeals, Division 71, held it may. We reverse the temporary court of appeals and affirm the trial court.

I

In their petition plaintiffs state they are resident taxpayers of defendant Town of Forest Park, a municipal corporation. They allege that from and after June 30, 1978, defendant town trustees approved payment to an Archer Printing Company for the printing of a newspaper called the "Forest Park News." Such expenditures are illegal, said plaintiffs, entitling them to recover the amount so spent from the trustees for the benefit of the town treasury.

Several editions of subject newspaper were placed in the record by agreement and the parties stipulated that the town had been paying for the printing and distribution of the publication. The parties agreed that there were no disputed facts, each moved the court for summary judg-

ment and the court granted one in favor of plaintiffs.

■ An issue or two of the Forest Park News refers to a monastery and one carries the following publication data:

Forest Park News Staff

Editor: Brother John Gitlis

Co-Editor: Abbot George Burke

Graphics: Father Seraphim Weber

\*   \*   \*   \*   \*   \*

The Forest Park News reserves the right to edit and condense letters and articles submitted according to space limitations and the Editor's judgment.

The Forest Park News is published monthly by the St. George Press, 3500 Coltrane Road, Forest Park, OK.

The parties having stipulated that the Forest Park News is not published by the municipality but by a private institution, the St. George Press, the fundamental and determinative issue that evolves, then, is whether the municipality of Forest Park may appropriate public funds for the printing and distribution of a newspaper published by a private entity.

The short answer to this question is it may not. "Taxes shall be levied and collected by general laws, and for public purposes only ...." Okla. Const. art. X, § 14. This provision has been held to mean that public funds may not be used to assist individuals or private organizations in their business functions. *Veterans of Foreign Wars v. Childers*, 197 Okl. 331, 171 P.2d 618 (1946); *Vette v. Childers*, 102 Okl. 140, 228 P. 145 (1924).

Nor is this the only place the state constitution speaks to the issue. Article X, § 17 specifies that the "Legislature shall not authorize any ... city [or] town ... to obtain or appropriate money for, or levy any tax for ... any corporation, association, or individual."

Therefore, in terms of this issue, the judgment rendered by the trial court is correct.

## II

The defendants attempt to justify the court of appeals decision on the theory that the municipality was actually the publisher of the full feature newspaper and that it had authority to publish it by virtue of the public purpose doctrine.

■ Assuming, for sake of argument, that the town is the publisher, we decline to extend the scope of the public purpose concept that far. Historically, control of the press has loomed large among the problems connected with dissemination of printed information. Struggles have generally existed in the past, and still do in many countries, between government controlled and free presses. If First Amendment press freedom is to have full and complete meaning it has to be that not only may the government not control the press directly but it may not do so indirectly by using tax dollars to engage in the publication of a newspaper which can cater to and promote private interests of advertisers as well as advance the self-serving private and political interests of incumbent officials. Even aside from this, common sense seems to dictate that the government has no business carrying on a newspaper business. To do so serves no legitimate public purpose but, on the contrary, bears considerable and grave potential for abuse, corruption and self-aggrandizement inimical to the general welfare.

The powers vested in the town trustees are defined and enumerated in 11 O.S.1981 § 12–106. Publication of a newspaper is not mentioned. The right of a municipality to engage in certain businesses is granted in 11 O.S.1981 § 22–104. Again, publication of a newspaper is not one of them.

■ As we mentioned earlier expenditure of tax dollars must constitutionally be for a public purpose. The term "public purpose" is synonymous with government purpose. *Board of Councilmen of City of Frankfort v. Commonwealth*, 26 Ky. 957, 82 S.W. 1008 (1904). We reject a construction of Okla. Const. art. X, § 14, or of 11 O.S.1981 §§ 12–106 and 22–101, that allows

a government, state or local, to publish a general circulation newspaper, as distinguished from so-called in-house newsletters, special purpose or feature magazines, or information pamphlets designed to promote, say, tourism or industrial expansion. Neither tradition nor necessity warrants governmental publication of a newspaper nor the financing of the private publication of one. While the line separating purposes of a public nature from those of a private nature cannot be drawn with clarity and preciseness, there are basic indicia illuminating the critical zone. The Supreme Court of the United States summarized it fairly well in *Citizens' Savings & Loan Association of Cleveland v. City of Topeka*, 87 U.S. (20 Wall.) 655, 22 L.Ed. 455 (1875), in this passage:

> "It is undoubtedly the duty of the Legislature which imposes or authorizes municipalities to impose a tax, to see that it is not to be used for purposes of private interest instead of a public use, and the courts can only be justified in interposing when a violation of this principle is clear and the reason for interference cogent. And in deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage; of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation."

To nourish the idea of a unit of government spending public funds for the publication of the type of newspaper involved here is bound to have an alarming if not disastrous political effect on our system of government. It is true that here we are dealing with a small newspaper published in a small Oklahoma suburban town, Forest Park. The name of the newspaper, Forest Park News, seems innocent and quaint enough, but the inescapable fact is that while the newspaper publishes news concerning the town business it also sells ads, prints general news and mails the publication to both residents and nonresidents of the town. Should it receive judicial approval it would be hard to forecast what its publishers will do.

Indeed, the April 1979 edition of the newspaper, instead of accenting a public purpose by encouraging robust public debate on the serious issue raised, quite clearly endeavors to justify its existence and to smother, if not completely crush, the views of what it characterizes as "a tiny minority" of opposing taxpayers. That edition carries this headline in large bold type: **"Your Newspaper: LIBERTY OR DEATH?"** It features a front page editorial—adorned with a drawing of the Roman Goddess of War, Minerva, accompanied by a big and hungry looking lion, and by-lined, "An editorial by Brother John Gitlis"—which embarks on the subject of this lawsuit and takes to task the attorney and "nine other Forest Park residents [who] recently filed suit against the town trustees," for what the editor characterizes as an attempt to take away the people's "freedom of expression" and "right to be informed" by suppressing the newspaper. The allegations of the petition do not, however, indicate that plaintiffs were motivated by such objective. They were concerned about the use of tax money to print and circulate the paper. Given the way the newspaper has handled this legal controversy, there is no reason to suspect that political views contrary to the official line of the Forest Park Trustees would be objectively published in the Forest Park News.

We hold taxpayers' money should not be spent for the purposes demonstrated by the record.

The decision of the temporary court of appeals is vacated and the judgment of the trial court is affirmed.

BARNES, C.J., SIMMS, V.C.J., HODGES and HARGRAVE, JJ., and BOYDSTON, S.J., concur.

WILSON, J., concurs in part, dissents in part.

BACON, S.J., concurs in result.