OSCN Found Document:Question Submitted by: Mike Jackson, Executive Director, Legislative Office of Fiscal Transparency

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Mike Jackson, Executive Director, Legislative Office of Fiscal Transparency
2023 OK AG 8
Decided: 05/25/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 8, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the State of Oklahoma own the Grand River Dam Authority's assets? 2. If the Legislature directed Grand River Dam Authority to sell assets, how would the sale proceeds be distributed?
I.
SUMMARY
¶1 Because the Grand River Dam Authority ("GRDA") is a governmental agency and created by statute, the State of Oklahoma owns its assets. Moreover, GRDA's funds are public funds. Upon a sale of the GRDA's assets, the Oklahoma Legislature must first satisfy all debts and obligations. Only after debts and obligations are satisfied or discharged may the Oklahoma Legislature appropriate the remaining proceeds as with any other public funds.

II.
BACKGROUND
¶2 In 1935, the Oklahoma Legislature created the GRDA for "control[ing], storing, preserv[ing], and distribut[ing] . . . waters of the Grand River and its tributaries, for irrigation, power and other useful purposes;" "conserv[ing] and develop[ing] . . . forests, minerals, land, water and other resources;" and "conserv[ing] and develop[ing] hydroelectric power and other electrical energy[.]" 1935 Okla. Sess. Laws ch. 70, art. 4, SB 395, 82 O.S.2021, § 861. From its inception, the Legislature described GRDA as a "governmental agency of the State of Oklahoma, body politic and corporate, with powers of government . . . ." 82 O.S.2021, § 861.
¶3 The Legislature granted several powers, rights, and privileges to the GRDA, including the ability to sell "any property of any kind, real, personal or mixed, or any interest therein, which shall not be necessary to the carrying on of the business of the [GRDA]." Id. § 862(9). GRDA is statutorily authorized to "make contracts and to execute instruments necessary, incidental or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by the [GRDA] Act." Id. § 862(16). The statute permits GRDA to "do any and all other acts or things necessary, incidental or convenient to the exercise of the powers, rights, privileges or functions conferred upon it by the [GRDA] Act or any other act or law." Id. § 862(19) (emphasis added).
¶4 GRDA's board of directors ("GRDA Board") governs the business of GRDA and is "responsible for approving business expenses of the [GRDA] necessary to carry out the business of the [GRDA]." Id. § 863.2(B). The Governor, the Senate President Pro Tempore, and the Speaker of the House of Representatives appoint members to the GRDA Board, much as they do other state agencies. Id. § 863.2(F) (1, 4, 5).
¶5 In support of GRDA's statutory charge, state law mandates the GRDA Board to "produce revenue adequate . . . to fulfill the terms of any agreements made with the holders of such bonds and/or with any person in their behalf[.]" Id. § 868. GRDA's enabling statute also empowers GRDA to fund and refund obligations by issuing new revenue bonds, using proceeds of new revenue bond sales, or exchanging new revenue bonds. Id. § 873. Additionally, state law also permits GRDA to renegotiate outstanding or contracted bonds. Id.

III.
DISCUSSION
A. The State of Oklahoma owns GRDA assets.
¶6 The State of Oklahoma owns GRDA assets for two reasons. First, as stated above, GRDA's enabling statute defines GRDA as a government agency, and that has been the case since its establishment in 1935. Second, GRDA funds are public funds. Id. § 861A(A).
¶7 The Oklahoma Supreme Court has determined that the State owns GRDA. In International Bhd. of Elec. Workers, Local Union 976 v. Grand River Dam Auth., the Court, relying on its holding in Sheldon v. Grand River Dam Authority, 1938 OK 76, 76 P.2d 355, held:
Since the Authority is engaged in "public purposes", and having determined in Sheldon v. Grand River Dam Authority, supra, that the Authority is "conducting a state function, which could have been accomplished by an existing state board or office", we conclude that the State of Oklahoma is the owner of and is operating the Grand River Dam Authority.
1956 OK 24, ¶ 9, 292 P.2d 1018, 1020. The Court reasoned that the State created GRDA to "exploit, preserve, and utilize in a certain specific manner that portion of its natural resources." Id. ¶ 8, 292 P.2d at 1020 (quoting Sheldon, 1938 OK 76, ¶ 19, 76 P.2d at 361). The Court also underscored section 861's pronouncement that GRDA is a governmental agency. Id.
¶8 Title 82, section 861A of the Oklahoma Statutes provides that GRDA "is subject to the laws of the state as they apply to state agencies except as specifically exempted by statute." As such, GRDA must comply with provisions in title 61 of the Oklahoma Statutes, which govern real property transactions; the Central Purchasing Act; the Oklahoma Personnel Act; article I of the Administrative Procedures Act; and the Public Competitive Bidding Act of 1974. See generally 1980 OK AG 51. Neither GRDA's enabling act nor these other acts expressly exempt GRDA.[1] Therefore, GRDA is clearly a governmental agency.
¶9 Along with being a governmental agency, GRDA's funds are statutorily designated as public funds. Title 82, section 861A of the Oklahoma Statutes states that "[a]ll funds generated, received and expended by [GRDA] are public funds[.]" GRDA funds are also "subject to state laws and regulations governing the receipt and expenditure of public funds in the same manner as all other state agencies except as otherwise provided by statute." 82 O.S.2021, § 861A. An Attorney General opinion, which concluded that the GRDA's funds could not be used to insure a private entity under a GRDA insurance policy, further supports a finding that GRDA's funds are public money. See 2007 OK AG 41(analyzing 82 O.S.2021, § 861A(A)). Put simply, GRDA's funds are the State's funds and thus must be handled in accordance with state law. Consequently, for the reasons stated above, the State of Oklahoma owns GRDA and its assets.

B. Following a legislative directive to sell GRDA assets, GRDA must first satisfy or discharge any debts or obligations prior to the Legislature utilizing any remaining proceeds for public purposes.
¶10 As previously discussed, GRDA is a creature of statute, meaning the Legislature may amend GRDA's powers and duties through the normal legislative process as opposed to submitting the question to a vote of the people. After all, article 5, section 1 of the Oklahoma Constitution vests "[t]he [l]egislative authority of the State" in the Legislature, subject to the people's reserved powers. The Constitution also grants the Legislature expansive authority "extend[ing] to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." OKLA. CONST. art. V, § 36. Consequently, the Legislature may, in its sound discretion, direct GRDA to sell or otherwise dispose of some or all of its assets.
¶11 However, state law and obligations assumed by GRDA necessitate proper distribution of any proceeds from the sale or disposition of GRDA assets. Specifically, the Constitution prohibits the Legislature from interfering with contracts. OKLA. CONST. art. II, § 15 ("No . . . law impairing the obligation of contracts, shall ever be passed."). This precludes the Legislature from directly or indirectly requiring GRDA to default on or otherwise breach its bond obligations. See Fortinberry Co. v. Blundell, 1952 OK 80, ¶ 23, 242 P.2d 427, 433 (holding the prohibition on interference with contracts applies to contracts when the State is a party). Additionally, the Supreme Court has determined that article II, section 15 operates to prevent the Legislature from impairing obligations because the underlying agreement between the bond issuer and the bond holder incorporates the authorizing statute. Board of Cnty. Comm'rs v. Mullins, 1950 OK 95, ¶ 15, 217 P.2d 835, 840. Specifically, the Mullins Court stated:
The general rule is that the laws in effect pursuant to which bonds were voted become a part and are read into the contract between the State or municipality, as the case may be, and the bondholders, and that the legislature may not later enact any legislation which would impair the obligation of such contract. 

Id. The Supreme Court also held in Wickham that the newly enacted article X, section 23 of the Oklahoma Constitution could not be applied to prevent GRDA from fulfilling its bond obligations to the federal government. Wickham v. Grand River Dam Auth., 1941 OK 346, 118 P.2d 640. The Court reasoned that it had previously held that "the law in force at the time of issuance of municipal bonds enters into the terms thereof, and the obligations of said contracts cannot thereafter be in any way impaired or the fulfillment therefore hampered or obstructed by a change in the law." Id. ¶ 15, 118 P.2d at 643. Since 1935, the Legislature has pledged to not in any way impair the rights or remedies of the holders of the bonds until the bonds are "fully met and discharged." 82 O.S.2021, § 868 (emphasis added). Thus, any legislation that would cause GRDA to violate its obligations to bond holders or that may impair bond holders' rights or remedies would likely be found unconstitutional. Such legislation would also contravene longstanding Oklahoma public policy that bond holders rely on when purchasing GRDA bonds.
¶12 In issuing bonds, GRDA further undertakes certain obligations and pledges security for the bonds as a remedy in its bond documents. Title 82, section 869(A) of the Oklahoma Statutes mandates GRDA to pay for indebtedness, liabilities, or obligations solely:
(1) out of the revenues received by the district in respect of its properties, or other accounts held for the payment and security thereof, subject to any prior lien thereon conferred by any resolution or resolutions theretofore adopted as in Section 861 et. seq. of this title . . . or (2), if the Board shall so determine out of the proceeds of sale or issuance by the district of bonds or bond anticipation notes payable solely from such revenues or such other amounts, or such credit or liquidity support as may be obtained by the district for such purposes, repayable solely from such revenues or other amounts.
Further, the bond documents themselves may also pledge certain funds in GRDA's possession for security of the bonds.[2] Thus, the Legislature must be mindful to not impair bondholders' rights when directing GRDA to sell or dispose of GRDA assets.
¶13 Finally, as a wholesaler of electrical power to certain Oklahoma municipalities, the Legislature must be mindful of GRDA's customers when crafting its directive to sell or dispose of GRDA assets. As noted above, no legislation should impair the contracts that GRDA has in place with its customers. See OKLA. CONST. art. II, § 15; Blundell, 1952 OK 80, 242 P.2d 427. Consequently, the Legislature must permit GRDA to satisfy or discharge its bond obligations and contractual obligations to customers before redirecting the remaining proceeds to other public purposes.

¶14 It is, therefore, the official Opinion of the Attorney General that: 

1. The State of Oklahoma owns the Grand River Dam Authority and its assets.
2. Prior to the Oklahoma Legislature expending remaining proceeds for public purposes[3], GRDA must first satisfy or discharge its outstanding debts and obligations. 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
EMILY ISBILL
ASSISTANT ATTORNEY GENERAL

FOOTNOTES
[1] GRDA's real property transactions prior to November 1, 2006, are not subject to the state statute governing real property transactions.
[2] Whether any of the bond documents in GRDA's outstanding issuances contain certain pledges is a question of fact, which falls outside the scope and purview of an Attorney General Opinion. 74 O.S.2021, § 18b(A)(5).
[3] The Oklahoma Supreme Court has held that "'public purpose' is synonymous with 'government purpose.'" State ex rel. Lacy v. Jackson, 1983 OK 122, ¶ 11, 682 P.2d 218, 220.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1980 OK AG 51, 
Question Submitted by: The Honorable Stratton Taylor, Oklahoma House of Representatives
Cited

 
2007 OK AG 41, 
Question Submitted by: Kevin A. Easley, Chief Executive Officer, Grand River Dam Authority
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1941 OK 346, 118 P.2d 640, 189 Okla. 540, 
WICKHAM v. GRAND RIVER DAM AUTH.
Discussed

 
1938 OK 76, 76 P.2d 355, 182 Okla. 24, 
SHELDON v. GRAND RIVER DAM AUTH.
Discussed at Length

 
1952 OK 80, 242 P.2d 427, 206 Okla 261, 
THE FORTINBERRY CO. v. BLUNDELL
Discussed at Length

 
1956 OK 24, 292 P.2d 1018, 
INTERNATIONAL BROTHERHOOD v. GRAND RIVER DAM AUTH
Discussed

 
1950 OK 95, 217 P.2d 835, 202 Okla. 628, 
BOARD OF COUNTY COM'RS OF TULSA COUNTY v. MULLINS
Discussed

 
1983 OK 122, 682 P.2d 218, 
State ex rel. Lacy v. Jackson
Discussed

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 18b, 
Duties of Attorney General - Counsel of Corporation Commission as Representative on Appeal From Commission
Cited

Title 82. Waters and Water Rights

 
Cite
Name
Level

 
82 O.S. 861A, 
Grand River Dam Authority - Agency Status - Mission - Authority - Expenses
Discussed

 
82 O.S. 861, 
District Created and Territory Included - Governmental Agency and Body Politic - Powers - Designation of Land and Water
Discussed

 
82 O.S. 868, 
Rates and Charges - Fees
Cited